PACIFIC CEMENT AND AGGRE-GATES, INC., Appellant,

v.

CALIFORNIA BANK, Bank of America N.T. & S.A., and Crocker-Anglo National Bank, Appellees.

No. 16280.

United States Court of Appeals Ninth Circuit.

Nov. 13, 1959.

Rehearing Denied Jan. 29, 1960.

Heller, Ehrman, White & McAuliffe, Paul T. Wolf, George A. Blackstone, San Francisco, Cal., for appellant.

Swanwick, Donnelly & Proudfit, Donald O. Welton, Los Angeles, Cal., Chickering & Gregory, C. Thorne Corse, Samuel B. Stewart, Bruce M. Casey, Jr., San Francisco, Cal., for appellees.

Before CHAMBERS, HAMLIN and MERRILL, Circuit Judges.

HAMLIN, Circuit Judge.

On October 31, 1934, Pacific Cement and Aggregates, Inc., appellant, filed its petition and Plan of Reorganization under former Section 77B of the Bankruptcy Act, 48 Stat. 912, 11 U.S.C.A. § 207 (1934). Thereafter, on December 17, 1934, the District Court for the Northern District of California, Southern Division, entered its Order confirming the Plan of Reorganization, and on March 23, 1936, entered its Final Decree in the proceeding.

■■ On March 26, 1958, appellant filed a "Notice of Motion for Order to Effectuate and Protect the Final Decree." On June 11, 1958, the District Court entered an order denying this motion and later denied a motion for rehearing. The District Court had jurisdiction to entertain the motion under Shores v. Hendy Realization Co., 9 Cir., 1943, 133 F.2d 738, and this court has jurisdiction of the timely appeal under 28 U.S.C.A. § 1291.

The appellees are Crocker-Anglo National Bank (formerly known as The Anglo California National Bank of San Francisco), California Bank (formerly known as California Trust Company) and Bank of America National Trust & Sav-

ings Association. The appellees will be referred to as "Anglo Bank," "California Bank" and "Bank of America." Appellant was formerly known as "Pacific Coast Aggregates, Inc.," and will be referred to as "Debtor."

Prior to institution of the Section 77B reorganization proceedings Debtor was in default in interest and sinking fund payments on its First Mortgage 6½% Sinking Fund Gold Bonds (called "bonds") and its Sinking Fund 7% Convertible Gold Debentures (called "debentures"). Holders of most of the bonds and debentures deposited their securities with certain depositaries (including California Bank) under two Protective Agreements, each dated December 31, 1931, relating to the bonds and debentures, respectively. Certificates of deposit were issued by the depositaries to the depositors as evidence of ownership of their deposited bonds and debentures.

Each of the Protective Agreements gave to a Protective Committee full control of the securities, including the right to transfer title to itself. Each Committee was authorized to assent on behalf of the security holder to any agreement, compromise or settlement, and if the Committee approved any plan or agreement, a copy thereof was to be filed with each depositary and notice given the depositors. Each depositor was authorized to dissent from the plan by giving written notice thereof to the depositary within fifteen days. If the majority of the depositors did not dissent, the Committee had power to declare such plan or agreement operative and binding on all depositors who had not signified their intention to withdraw.

Debtor adopted a Plan of Reorganization which was approved by the Protective Committees. Notice of adoption of the Plan was given as provided, and a small percentage of the bond and debenture holders withdrew. Those who left their bonds and debentures on deposit were deemed to have adopted and consented to the Plan, which was subsequently confirmed by the Court.

The Plan provided for exchange of all old securities for one class of new common stock, and the Order confirming the Plan specified the procedure for surrender and cancellation of all old securities in exchange for new common stock.

The Order provided that certificates representing the shares due the bondholders were to be delivered to Anglo Bank and certificates representing the shares due the debenture holders were to be delivered to Bank of America. These two trustee banks were authorized to cause to be issued new shares to any holder or depositary surrendering bonds or debentures, respectively. The Order further provided in paragraph 54:

"54. That holders of Certificates of Deposit issued under the Protective Agreement dated December 1, 1931, with respect to bonds, are hereby authorized and directed to surrender certificates of deposit to the Depositary which issued the same and each of said Depositaries under the above-mentioned Protective Agreement is authorized and directed to forward the bonds represented thereby to The Anglo California National Bank of San Francisco, as Trustee under the Trust Indenture securing said bonds, for cancellation upon the issuance of certificates representing Common stock of the Debtor issuable under said Plan. That each of said depositaries shall certify to said The Anglo California National Bank of San Francisco, as Trustee, the names and addresses of holders of bonds evidenced by such certificates of deposit so surrendered for cancellation and the face amount owned by each such holder. That said Trustee shall notify said Transfer Agent to issue the appropriate number of shares of Common stock issuable under said Plan in the names of such owners and holders and the Transfer Agent shall thereupon issue the same, cause the name of the record owner and holder and the address and number of shares to be entered in its trans-

-fer books and such shares to be registered and returned to the Trustee, which shall forward the same to the Depositary from which such bonds were received. That said The Anglo California National Bank of San Francisco, as Trustee, upon the issuance of said shares of stock shall cancel all such bonds as hereinbefore provided."

Paragraph 55 of the Order was applicable with respect to debentures, Bank of America being named as trustee.

It is to be noted that no time limit was provided in the Order for the holders of certificates of deposit to surrender them to the issuing depositary.

Stock certificates representing the new stock were delivered to Anglo Bank and Bank of America. These stock certificates were registered in the name of Anglo Bank and Bank of America as trustee for California Bank as depositary for the benefit of holders of bonds and debentures, respectively. On January 18, 1935, California Bank, one of the depositaries under the Protective Agreements, forwarded to Anglo Bank all of the bonds and to Bank of America all of the debentures which had theretofore been deposited with it under the Protective Agreements.

On March 23, 1936, the District Court in the reorganization proceedings issued its Final Decree. At that time certain of the bonds and debentures had not been surrendered for cancellation or exchange in accordance with the Order confirming the Plan of Reorganization. The Final Decree provided in part:

"That it is necessary, equitable and proper that the time be limited within which the owners and holders of said unexchanged securities and stock of the Debtor may surrender the same in exchange for New Common Stock of the Debtor under said Plan of Reorganization, as follows, viz.:

"(a) That the owners and holders of such of said First Mortgage 6½% Sinking Fund Gold Bonds of the Debtor as have not heretofore been surrendered for cancellation and exchange for shares of the Debtor's New Common Stock under said Plan of Reorganization, are hereby ordered and directed to surrender said bonds * * * held by them respectively within ten years after the entry of this Final Decree to The Anglo California National Bank of San Francisco, as such Trustee, for cancellation and exchange for the shares of the Debtor's New Common Stock exchangeable under said Plan of Reorganization on account thereof."

The Decree contained a similar provision in reference to the unsurrendered debentures, Bank of America being named as trustee.

The Final Decree further provided in paragraph VIII that upon expiration of the ten-year period all bonds and debentures

"* * * which shall not theretofore have been surrendered for cancellation and exchange in accordance with said Plan of Reorganization, said Order Confirming Plan of Reorganization and this Final Decree, shall become absolutely void and all rights and claims of the owners and holders thereof, respectively, shall from and after the expiration of said ten-year period, forever be barred.

"That said The Anglo California National Bank of San Francisco, as such Trustee, and said Bank of America National Trust & Savings Association, as such Trustee, are hereby ordered and directed, upon the expiration of said ten-year period, to forthwith deliver to the Debtor all shares of the Debtor's New Common Stock (including dividend accumulations) then held by them respectively for the benefit of the owners and holders of such of the Debtor's bonds, debentures, * * * as shall not theretofore have been surrendered for exchange. The Debtor, upon receipt from said Trustees or either of them of any of said shares of its New Common

Stock, shall forthwith return the same to the status of authorized but unissued shares."

It appears that with respect to certificates of deposit which were surrendered to it, California Bank followed the procedure specified in the Order, and as owners surrendered their certificates of deposit, California Bank instructed the respective trustee banks to cause shares of new common stock to be issued in the names and amounts set forth on a journal report enclosed with the letter of instructions.

Certificates of deposit have never been surrendered by depositors of $3,000 of bonds and $12,000 of debentures which were deposited with California Bank pursuant to the Protective Agreements entered into on December 31, 1931, long prior to commencement of the reorganization proceeding. The record shows that the whereabouts of the holders of these certificates is unknown, but it appears in an affidavit of B. E. Brownell, Vice President, Corporate Trust Division, of California Bank that the efforts of California Bank in this regard have been limited to the writing of letters to the last known address of the certificate holders, that it is believed that the holders of these certificates can be located by incurring the expense of experts in tracing such persons, and that California Bank has not felt that it should incur this expense until it was determined that the certificate holders are entitled to stock.

The banks still hold for exchange certificates representing 768 shares of new common stock. One of the certificates represents a balance of 360 shares delivered to Anglo Bank and the other represents a balance of 408 shares delivered to Bank of America. Both these certificates were delivered to the respective banks as trustee for California Bank as depositary for the bonds and debentures, respectively. Anglo Bank has retained both the bonds and 360 shares of new common stock held by it for exchange for the bonds, together with accumulated dividends thereon. On November 6, 1957 Bank of America returned to California Bank the debentures, together with certificates for 408 shares of new common stock held by it for exchange for the debentures, and accumulated dividends.

Debtor contends that the bonds and debentures represented by the outstanding certificates of deposit have not been "surrendered" for cancellation and exchange and that paragraph VIII of the Final Decree, read with the Plan and Order confirming the Plan, requires the banks to return to Debtor the new stock certificates together with accumulated dividends of $5,045.76.

As noted, California Bank on January 18, 1935, forwarded the bonds to Anglo Bank and the debentures to Bank of America. The forwarding letter to each bank stated the securities were forwarded pursuant to instructions received from the Protective Committees under the Plan of Reorganization, and that the securities were

"* * * not to be cancelled or otherwise dealt with except under instructions which we will hereafter send you from time to time. Under such instructions we contemplate requesting that certain of said bonds or debentures with coupons thereto attached be cancelled by you when you can deliver to us the new common stock of Pacific Aggregates, Inc., issued in names and amounts contemplated by the Plan of Reorganization dated October 31, 1936."

We think surrender of the bonds and debentures was thereby accomplished so as to entitle the holders of certificates of deposit to the stock allotted to them under the Plan, and the surrender requirement was thus not applicable to the bonds and debentures involved. It might be pointed out that from the record it does not appear whether the District Court when it entered its Final Decree in 1936 knew that California Bank had forwarded the bonds and debentures to the trustee banks.

Debtor submits that the bonds and debentures were sent to the trustee banks merely for safekeeping and as a matter of convenience, but we think it inescap-

able that they were forwarded pursuant to the Plan of Reorganization, looking to their subsequent cancellation and issuance of new stock. The Order confirming the Plan provided for surrender of bonds and debentures by "the holder or holders thereof (including, as provided in Section 54 hereof, any Depositary of said bonds) * * *." California Bank was such a depositary.

On surrender of bonds or debentures the trustee banks were to cancel them and cause to be issued and delivered to the holder or depositary certificates evidencing the proper number of shares of new stock. Although the bonds and debentures in question have not been cancelled and new stock in exchange therefor has not been issued, we hold that such action was not necessary to constitute a surrender for exchange. In our view, the Plan, Order confirming the Plan and Final Decree contemplated as separate acts (1) surrender of the bonds and debentures, (2) cancellation thereof, and (3) issuance of new stock. The fact the latter two acts have not been done does not affect our conclusion that the first, "surrender," has been accomplished. As noted by the District Court, "the physical delivery of the securities was conditioned only upon the giving of future instructions relating to the manner of issuance of the future securities in the names of particular individual owners."

Our conclusion necessarily includes rejection of Debtor's interpretation of the Final Decree as requiring surrender within ten years of certificates of deposit as a condition to receiving new stock. Paragraph VIII of the Final Decree requires surrender within ten years of only the bonds and debentures. Neither the Order confirming the Plan nor the Final Decree specifies any time limit for surrender of the certificates of deposit. The certificates of deposit may well represent the bonds and debentures, but as Debtor concedes, they are nothing more than escrow receipts and not the bonds and debentures themselves, which had been deposited long before under the Protective Agreements of 1931 and delivered to the trustee banks in 1935.

Even if surrender of the certificates of deposit at some time be deemed a condition to the right to receive new stock, it does not follow that surrender of such certificates by the depositors is either a condition to or the equivalent of surrender of the bonds and debentures. Surrender of the bonds and debentures could, and we hold did, occur independent of surrender of the certificates of deposit.

It is true that the Order authorizes and directs the holders of certificates of deposit to surrender their certificates to the depositary and that one possible reading of the language of the Order supports the interpretation advanced by Debtor, but we do not think this is a necessary construction. The Order sets out the procedural mechanics for exchange of stock for bonds and debentures, the process to be initiated by surrender of certificates of deposit, but it does not purport to confer any rights on Debtor, which was not a party to the deposit transactions. We do not think that establishment of an orderly procedure clearly designed to facilitate distribution of new stock was meant to impliedly make possible forfeiture of the rights of the holders of certificates of deposit to the end of bestowing a windfall on Debtor and its stockholders.

Whether California Bank as depositary had any duty to deliver the bonds and debentures to the trustee banks is not of concern to Debtor. The important thing is that it was done. Likewise, whether California Bank has any present duty or obligation to the holders of certificates of deposit issued by it is not before us.

Even though there had been no surrender prior to the Final Decree in 1936, it does not necessarily follow that the holders of certificates of deposit would now be barred, as the surrender requirement need not be construed to extend to bonds and debentures that had been previously deposited. It is unnecessary, however, to resolve this question in view of our holding that a surrender of the bonds and debentures took place prior to

the Final Decree in 1936, and that the ten-year time limitation thus had no application to the holders of the outstanding certificates of deposit.

The orders of the District Court appealed from are affirmed.