## TERRITORIAL COURT OF THE VIRGIN ISLANDS, Plaintiff

v.

## JAMES R. RICHARDS, in his capacity as INSPECTOR GENERAL, OFFICE OF INSPECTOR GENERAL, U.S. DEPARTMENT OF INTERIOR

and

## NEAL LITTLEFIELD, in his capacity as REGIONAL AUDIT MANAGER, CARIBBEAN REGION, ST. THOMAS, V.I., OFFICE OF INSPECTOR GENERAL, U.S. DEPARTMENT OF INTERIOR, Defendants

Civil No. 1987/24

District Court of the Virgin Islands

Div. of St. Thomas and St. John

October 21, 1987

BRENDA J. HOLLAR, ESQ., St. Thomas, V.I., and LEON KENDALL, ESQ. (Argued), General Counsel (Territorial Court of the Virgin Islands), St. Thomas, V.I., *for plaintiff*

*For defendant:*

RICHARD K. WILLARD, ESQ., Assistant Attorney General, MICHAEL F. HERTZ, ESQ., and ROBERT L. ASHBAUGH, ESQ. (Argued), Attorneys, Civil Division (U.S. Department of Justice), Washington, D.C.

TERRY M. HALPERN, ESQ., United States Attorney, and JAMES S. CARROLL III, ESQ., Assistant U.S. Attorney, St. Thomas, V.I.

THOMAS E. ROBINSON, Associate Solicitor, and WILLIAM S. FIELDS, ESQ. (U.S. Department of Interior), Washington, D.C.

O'BRIEN, *Judge*

## MEMORANDUM AND ORDER

The Territorial Court of the Virgin Islands seeks to prevent an audit of its operations by the Inspector General of the United States Department of the Interior. It cites the separation of powers doctrine as a constitutional limitation on any such intrusion into its affairs. It claims as well an absence of statutory authority allowing such an audit. We find no constitutional impairment, and that there is ample statutory permission to enforce the Inspector General's subpoena directed to the Territorial Court.

## I. FACTS

Neal H. Littlefield, the Caribbean regional audit manager for the Inspector General of the United States Department of Interior, recommended an audit of the Territorial Court of the Virgin Islands in the fall of 1985. He did so because his office had never directly audited the Territorial Court, and the predecessor office charged with similar duties had not audited the Court since 1976, when it was known as the Municipal Court of the Virgin Islands.[1]

After approval, Littlefield, by letter dated May 13, 1986, notified the Territorial Court's Presiding Judge, Hon. Verne A. Hodge, of this audit. An entrance conference was held on June 26, 1986, attended by members of Littlefield's staff and by Judge Hodge, among others.

The federal officials told Judge Hodge that the audit had three objectives. It would seek to determine whether funds received by

---

[1] The facts we recite are essentially derived from the affidavits of Neal H. Littlefield and Judge Verne A. Hodge respectively. We see no reason to strike portions of Littlefield's affidavit as requested by the Territorial Court.

the Territorial Court were accounted for; whether procurement practices were in compliance with Virgin Islands law; and whether the Territorial Court was achieving its program directives. This was to be accomplished by exploring the Territorial Court's

 (a) revenues and cashier collection procedures;
 (b) expenditures and procurement practices;
 (c) recording and collection of receivables for Court fines;
 (d) control over escrow accounts for bail funds;
 (e) control over equipment and other assets;
 (f) time and attendance and payroll procedures.

Although initially receptive to the audit's subject matter, Judge Hodge immediately voiced strong concerns regarding the reasons for the audit, the timing of the audit and the status of other indirect audits of the Territorial Court by the Inspector General's Office. Specifically, he was concerned with the propriety of the Inspector's involvement in various published articles in the Virgin Islands Daily News concerning these indirect audits. He also challenged two of the objectives of the audit.

These concerns were first expressed by phone to assistant Inspector General Harold Bloom on August 16, 1986. Subsequently, Judge Hodge wrote Bloom on September 16, 1986, requesting Bloom's confirmation as to the conditions under which Judge Hodge would permit the audit. In addition, Judge Hodge retained counsel for the Territorial Court who wrote Bloom on September 23, 1986, challenging the Inspector's authority to audit the Territorial Court.

Despite Bloom's and Littlefield's continued assurances in the fall of 1986 that the audit would be properly conducted, Judge Hodge was not satisfied and did not consent to the audit. As a result, Inspector General James R. Richards ("Inspector") issued a subpoena duces tecum ("subpoena") in November, 1986 directed to Viola Smith, Clerk of the Territorial Court. The subpoena was served in late January 1987. It required compliance by production of the relevant documents no later than February 2, 1987.

A) *Procedural Background*

Rather than comply or await a petition to enforce in this Court, the Territorial Court took the initiative and filed this action for declaratory and injunctive relief on January 23, 1987. It then moved to quash the subpoena. However, by stipulation approved by this Court on March 4, 1987, the parties agreed that no documents were to be produced before resolution of the conflict by this Court.

Further, they agreed that the Inspector would file the appropriate "pleadings" to enforce the subpoena and join such action with the Territorial Court's motion to quash. The Inspector did just that. Briefing and oral argument followed.

B) *Arguments*

In opposition to enforcement, the Territorial Court disputes a portion of the Insular Areas Act of 1982, 48 U.S.C.A. § 1599 (Supp. 1987), which grants the Inspector audit oversight of the government of the Virgin Islands. It argues that to the extent the statute is applied to allow the Inspector to audit the Territorial Court, it is unconstitutional as violative of the doctrine of separation of powers. The Territorial Court also cites 48 U.S.C.A. § 1544 in support of its constitutional argument. Relying on that provision for statutory support, it argues that Congress excepted the Territorial Court from the Inspector's jurisdiction, and placed the Territorial Court's supervision in the hands of the Administrative Office of the United States Courts ("Administrative Office").

Although not an argument against enforcement, the Territorial Court also asserts that if the Inspector is permitted to audit it, the Inspector will perform ultra vires acts similar to its behavior in earlier audits of territorial government affairs. It seeks discovery to substantiate these allegations, aiming to use such improprieties, if proved, as a further bar to an audit, and/or as a basis for an injunction limiting the audit.

At oral argument, counsel for the Territorial Court reiterated the plaintiff's reliance on its constitutional argument. However, he conceded that this defense was not asserted until, as he said, there developed a "meretricious" relationship between the Inspector and the local press concerning the earlier indirect audits of the Territorial Court by the Inspector. Apparently, the Territorial Court was collaterally audited by the Inspector on several occasions between 1983 and 1986. These indirect audits occurred during the Inspector's direct audits of various departments of the executive branch of the Government of the Virgin Islands.

## II. DISCUSSION

Congress specifically transferred audit oversight functions from the government comptroller for the Virgin Islands to the Inspector by virtue of the Insular Areas Act of 1982. See 48 U.S.C.A. § 1599

(Supp. 1987).[2] Pursuant to the Inspector General Act of 1978, the Inspector has subpoena power to carry out his duties. 5 U.S.C.A. App. 3 § 6 (Supp. 1987). This power to subpoena, however, is not self executing. Rather, application must be made for a Court order enforcing compliance. 5 U.S.C.A. App. at § 6 (a)(4).[3]

## A) *Jurisdiction*

■ A motion seeking enforcement of such a subpoena confers subject matter jurisdiction of the cause on this Court. Until enforcement is sought, there is not the immediate and irreparable

---

[2] That statute provides:

§ 1599. *Transfer of functions from government comptroller for the Virgin Islands to Inspector General Department of the Interior*

(a) Functions, powers and duties transferred

The following functions, powers and duties heretofore vested in the government comptroller for the Virgin Islands are hereby transferred to the Inspector General, Department of the Interior, for the purpose of establishing an organization which will maintain a satisfactory level of independent audit oversight of the government of the Virgin Islands:

(1) The authority to audit all accounts pertaining to the revenue and receipts of the government of the Virgin Islands, and of funds derived from bond issues, and the authority to audit, in accordance with law and administrative regulations, all expenditures of funds and property pertaining to the government of the Virgin Islands including those pertaining to trust funds held by the government of the Virgin Islands.

(2) The authority to report to the Secretary of the Interior and the Governor of the Virgin Islands all failures to collect amounts due the government, and expenditures of funds or uses of property which are irregular and not pursuant to law.

(b) Scope of authority transferred.

The authority granted to paragraph (a) of this section shall extend to all activities of the government of the Virgin Islands, and shall be in addition to the authority conferred upon the Inspector General by the Inspector General Act of 1978 (92 Stat. 1101), as amended.

48 U.S.C.A. § 1599.

[3] The Inspector General Act provides in relevant part:

(a) In addition to the authority otherwise provided by this Act, each Inspector General, in carrying out the provisions of this Act is authorized—

. . .

(4) to require by subpoena the production of all information, documents, reports, answers, records, accounts, papers, and other data and documentary evidence necessary in the performance of the functions assigned by this Act, which subpoena, in the case of contumacy or refusal to obey, shall be enforceable by order of any appropriate United States District Court; Provided, That procedures other than subpoenas shall be used by the Inspector General to obtain documents and information from Federal agencies;

. . .

5 U.S.C.A. App. at § 6(a)(4).

injury of the type remedied by declaratory or injunctive relief as sought herein by plaintiff. Belle Fourche Pipeline Co. v. United States, 751 F.2d 332, 335 (10th Cir. 1984), cert. denied, 474 U.S. 818, 106 S.Ct. 64 (1985) (citing Reisman v. Caplin, 375 U.S. 440 (1964)).

It was in Reisman that the Supreme Court strongly disfavored pre-enforcement review of investigative subpoenas. Challenges to enforcement are to be heard at the enforcement hearing. 375 U.S. at 449. Thus, in the case at bar, only the Inspector's counterclaim seeking enforcement and not plaintiff's complaint provided us with subject matter jurisdiction. Comet Electronics Inc. v. United States, 381 F. Supp. 1233, 1237 (W.D. Mo. 1974), aff'd mem., 420 U.S. 999 (1975).

We make this distinction because the Territorial Court asserts that the Inspector breached the March 4, 1987, stipulation by moving for enforcement. It claims that the stipulation allowed the counterclaim for enforcement, but not the follow-up motion.

We recognize, however, that enforcement hearings are summary in nature. E.E.O.C. v. Bay Shipbuilding Corp., 668 F.2d 304, 310 (7th Cir. 1981). We believe, therefore, that the Territorial Court's contention represents a misunderstanding respecting the meaning of the term "pleadings" as used in the stipulation. We did not read the stipulation at the time of our approval, nor do we now, as a waiver by the defendants of their right to seek prompt resolution of this conflict, and enforcement of the subpoena. Indeed, we would not approve a stipulation which could effectively delay resolution of this conflict, recognizing the summary nature of the proceeding. Thus, we turn to that question.

B) *Enforcement*

■ Three criteria must exist before an administrative subpoena will be enforced. It must be within the statutory authority of the agency, it must seek relevant information and it must not be unduly burdensome. United States v. Westinghouse Elec. Corp., 788 F.2d 164, 166 (3d Cir. 1986) (citations omitted). The Third Circuit also requires that a subpoena not be issued for an improper purpose such as harassment. Id. at 166–167 (citations omitted).

■ Normally a Court will accept as sufficient an agency's pleading that the matter under investigation is within its statutory coverage. N.L.R.B. v. Interstate Dress Carriers, Inc., 610 F.2d 99, 111 (3d Cir. 1979). Only where appropriate is even a hearing or

discovery required. Id. at 112 (citations omitted). If statutory authority exists, the information sought is relevant and not burdensome, and if the challenging party has not put the good faith of the agency squarely in issue, a district court is to act summarily. Cf., Interstate Dress Carriers, supra at 112 (citations omitted).

Here the relevancy and scope of the subpoena are not factually challenged, nor is the agency's good faith contested. Rather, we face a constitutional and statutory challenge to the Inspector's authority, and an allegation that the audit should not be allowed since it will not proceed according to the Inspector's own rules and regulations. We address each seriatim.

### 1. *Separation of Powers*

■ Article IV, § 3 of the United States Constitution gives Congress the authority to make all needful rules and regulations respecting this territory. Granville-Smith v. Granville-Smith, 349 U.S. 1, 4 (1954) (striking down the then existing Virgin Islands divorce law as beyond the authority conferred by Congress upon the Territorial legislature). This authority has been described as plenary; United States v. Canel, 708 F.2d 894, 896 (3d Cir. 1983), cert. denied, 464 U.S. 852 (1983); complete, United States v. Husband R. (Roach), 453 F.2d 1054 (5th Cir. 1971), cert. denied, 406 U.S. 935 (1972); and broad, Examining Bd. v. Flores de Otero, 426 U.S. 572, 586 n.16 (1975) (citations omitted).

Pursuant to this grant of authority, Congress enacted the Organic Act of 1936 and the Revised Organic Act of 1954 as amended; 48 U.S.C. § 1541 et seq., which declared the Virgin Islands to be an unincorporated territory and created its basic charter of government. See generally, Virgo Corp. v. Paiewonsky, 384 F.2d 569, 576–78 (3d Cir. 1967), cert. denied, 392 U.S. 917 (1968). As was recognized in Municipality of St. Thomas and St. John v. Gordon, 78 F. Supp. 440, 443–44 (D.V.I. 1948), in so doing Congress established three separate departments of government for the Virgin Islands, that is, the executive, judicial, and legislative branches.

■ This system is, of course, in accord with the common American constitutional method of three separate coordinate and co-equal branches of government. Id.; Luis v. Dennis, 20 V.I. 373, 576 F. Supp. 733, 735 (D.V.I. 1983), vacated, 751 F.2d 604 (3d Cir. 1984). However, we make clear today that this system as applied to the Virgin Islands government is not of a constitutional nature

because the local government does not exist by virtue of a constitution as does the federal government.[4] It exists only by virtue of the legislative grace of Congress.[5] Canel, 708 F.2d at 897. This may rankle we who live in the Virgin Islands, but it is a legal fact of life.

Of course, the doctrine of separation of powers is an inherent structural component of the United States Constitution, applied by the framers as they allocated the sovereign power of the people among the three co-equal branches of the federal government. Nixon v. Administrator of General Services, 433 U.S. 425, 443 (1976) [citing United States v. Nixon, 418 U.S. 683, 707 (1974) (adopting Justice Jackson's position in Youngstown Steel & Tube v. Sawyer, 343 U.S. 579, 635 (1952))]. But since the relationship between the Territorial Court and the Inspector as defined by Congress is not one between co-equal branches of the same government, the basic premise underlying the application of the principles of separation of powers is lacking.

■■ Congress may have implicitly included separation of powers principles in creating the horizontal relationship between the three branches of the Virgin Islands government; see Government of the Virgin Islands v. Eleventh Legislature, 13 V.I. 53, 83 (D.V.I. 1976), aff'd 536 F.2d 34 (3d Cir. 1976), but it is a far different thing to suggest that those principles apply to the vertical relationship between the federal government and the territorial government. We have found no case, nor has the Territorial Court presented us with any case, which would suggest that Congress' plenary power vis-a-vis the territories is limited in this way. Indeed, it has been long established that only the most fundamental constitutional rights extend to this territory where Congress is silent on the subject. See Soto v. United States, 1 V.I. 536, 273 F.2d 628 (3d Cir. 1921). Government of the Virgin Islands v. Rojas, 6 V.I. 476, 285 F. Supp. 126 (D.V.I. 1968). We do not believe that

---

[4] Our reasoning in Luis is flawed to the extent it holds that the separation of powers doctrine as it relates to the three branches of the local government is of a constitutional nature. Thus, even if it were not vacated, we would not follow its reasoning here. Indeed, in its opinion vacating our Luis decision, the Circuit noted that the question of the Territorial Legislature's infringement on the governor's appointment power is essentially whether the provisions of the Revised Organic Act have been violated.

[5] For example, prior to the Organic Act of 1936, Congress governed these islands through the auspices of the then Department of the Navy. See Act of Congress, March 3, 1917, ch. 171, 39 Stat. 1132 § 1.

the framers intended to apply separation of powers principles to the relationship between the branches of the federal government and those territorial governments whose existence was to be a product of the will of Congress.

Furthermore, as the Third Circuit pointed out, the inquiry where an activity is challenged under the guise of separation of powers concerns only the "extent to which the challenged action prevents the affected branch from accomplishing constitutionally assigned functions." Matter of President's Com'n on Organized Crime, 783 F.2d at 370 (3d Cir. 1986). If, and only if, the potential for disruption exists, does a Court concern itself with whether the constitutional objective of the intervening branch justifies the intrusion. Id. The Territorial Court does not carry out any constitutionally mandated functions, and in fact it is not a constitutional court. See, e.g., Government of the Virgin Islands v. Bell, 6 V.I. 456, 392 F.2d 207 (3d Cir. 1968), cert. denied, 398 U.S. 937 (1969) (the District Court of the Virgin Islands is not a constitutional court).

As the Supreme Court wrote in American Insurance Company v. Canter, 26 U.S. 388 [511] (1 Pet.) (1828), referring to the Territorial courts of the then territory of Florida:

> . . . These courts, then, are not constitutional courts, in which the judicial power conferred by the Constitution on the general government can be deposited. They are incapable of receiving it. They are legislative courts, created in virtue of the general right of sovereignty which exists in the government, or in virtue of that clause which enables Congress to make all needful rules and regulations, respecting the territory belonging to the United States. The jurisdiction with which they are invested, is not a part of that judicial power which is defined in the 3d article of the Constitution, but is conferred by Congress, in the execution of those general powers which that body possesses over the territories of the United States . . . .

Id. at ---. Indeed, merely because a Court has constitutional functions does not ipso facto make it a constitutional court. Mookini v. United States, 303 U.S. 201, 205 (1937).

■ Yet even if this distinction be blurred, it is this Court and not the plaintiff which is repository of such constitutional functions in this territory. See 48 U.S.C.A. § 1612(a); see generally, United States v. George, 625 F.2d 1081 (3d Cir. 1980). Thus, as to the

Territorial Court we have no occasion to even reach separation of powers questions.[6] It seems specious to argue that these principles apply to govern the relationship between one government whose very existence is dependent upon the other. Moreover, even if it could be said that the Territorial Court was a co-equal branch which carried out constitutional functions so as to require justification for an intrusion by a federal executive or legislative branch agency, we would be hard pressed to find here the potential for disruption necessary for us even to consider whether the objectives of the Inspector justify the intrusion. See, e.g., Chandler v. Judicial Council, 398 U.S. 74, 84 (1970); Matter of Certain Complaints Under Investigation, 783 F.2d 1488 (11th Cir.), cert. denied, 477 U.S. 904, 106 S.Ct. 3273 (1986). Accordingly, the plaintiff's constitutional argument must fail.

### 2. *Statutory Interpretation*

The Territorial Court argues that Congress never intended by virtue of the Insular Areas Act to allow the Inspector to audit it. Specifically, it argues that where the Insular Areas Act refers to the government of the Virgin Islands, only the executive branch of the Territorial government is implicated. In support of both this and its constitutional contention it cites 48 U.S.C.A. § 1544 which provides:

> All reports required by law to be made by the Governor to any official of the United States shall hereafter be made to the Secretary of the Interior, and the President is authorized to place all matters pertaining to the government of the Virgin Islands under the jurisdiction of the Secretary of the Interior, except matters relating to the judicial branch of said government which on July 22, 1954 are under the supervision of the Director of the Administrative Office of the United States Courts, and the matters relating to the United States Attorney and the United States Marshal which on July 22, 1954 are under the supervision of the Attorney General.

---

[6] Indeed, the fact that Congress has plenary authority to confer jurisdiction on the courts of a territory as opposed to the jurisdiction imposed by the Constitution upon Article III courts was also recognized in Canel. It is this power of Congress that the Supreme Court in Northern Pipeline Co. v. Marathon Pipeline Co., 458 U.S. 50, 70 (1981), declared as an "exception to Article III", and which distinguishes this Court and the Territorial Court from Article III courts whose independence is assured. But see Mundy v. Weinberger, 554 F. Supp. 811, 824 (D.C.D.C. 1982).

The Territorial Court contends that this section evidences Congress' separation of powers intent vis-à-vis this territory's judiciary.[7] It argues that by virtue of 48 U.S.C. § 1611(a) it is clearly included within the meaning of the phrase "judicial branch of said government." Section 1611(a) reads:

> The judicial power of the Virgin Islands shall be vested in a court of record designated the "District Court of the Virgin Islands" established by Congress, and in such appellate court and lower courts as may have been or may hereafter be established by local law[.]

The Territorial Court puts forward the view that § 1544 required that from July 22, 1954, forward, the supervision of the judiciary of the Virgin Islands, including the Territorial Court, was to be in the hands of the Administrative Office. We disagree.

■ In interpreting any statute we begin with the language itself. We presume that the legislative intent is expressed by the ordinary common sense meaning of the words used. Barnes v. Cohen, 749 F.2d 1009 (3d Cir. 1984), cert. denied, 471 U.S. 1061 (1985); United States v. Bey, 736 F.2d 891 (3d Cir. 1984). We note, therefore, that if Congress meant what the Territorial Court suggests, it used strange words indeed because the words employed read "except matters *which on* July 22, 1954 are under the supervision of . . . (emphasis added).

The meaning suggested by the Territorial Court would be better expressed by words such as ". . . except matters relating to the judicial branch which *are hereby placed* under the supervision of . . . ." The inclusion of the exact date or the reference to the date of the enactment of the act would be superfluous if Congress meant what the Territorial Court argues. Rather, it is more plausible that Congress was referring to matters already placed as of July 22, 1954, into the hands of the Administrative Office. It is undisputed that the Administrative Office did not in 1954, nor does it now, nor has it ever, supervised any court of this territory, except the district court.

---

[7] At oral argument, the Territorial Court pressed its separation of powers argument to the extent that even absent the existence of § 1544, the Inspector would have no authority to audit the Territorial Court or this Court. The Inspector, on the other hand, could not be tempted into addressing the question whether this Court could be audited by his office absent § 1544.

This interpretation is borne out by the predecessor of § 1544, section 39 of the Organic Act of 1936. That section was not repealed in 1954 at the enactment of § 1544, but was left standing until 1982 at the enactment of the Insular Areas Act of 1982. It stated:

> All reports required by law to be made by the Governor to any official of the United States shall hereafter be made to the Secretary of the Interior, and the President is hereby authorized to place all matters pertaining to the Government of the Virgin Islands under the jurisdiction of the Secretary of the Interior, except matters relating to the judicial branch of said government which shall be as hereinbefore provided under the supervision of the Attorney General.—June 22, 1936, ch. 699, § 39, 49 Stat. 1817.

Several points can be drawn. First, that at one time, namely 1936, Congress intended that even this Court was to be supervised by a federal executive branch agency, i.e. attorney general.

■ More importantly, because § 39 was repealed in 1982 we can presume Congress chose to leave § 1544 in its stead. We can also presume that Congress, being aware of the administrative practices under its statutes, was aware that in 1982 the Administrative Office was not supervising the Territorial Court. If the 1982 Congress read § 1544 to require the Administrative Office to supervise the Territorial Court one would presume that it would have corrected that failure. Alternatively, knowing that since 1954 the Territorial Court was not under the supervision of the Administrative Office, it would have amended § 1544 in 1982 to insure such supervision if Congress desired such supervision. Section 1544, remaining as it read in 1954, suggests that the Territorial Court's position is incorrect.[8]

The explanation we find more likely is that sometime between 1936 and 1954 the supervision of the district court was moved from the Attorney General to the Administrative Office. Section 1544 was, therefore, intended to insure that the agency charged with supervision of the entire federal judiciary ought also supervise this federal court. But the Territorial Court is not a federal court, thus, we find it implausible that Congress would assign the supervision of such a court to an agency which has nothing to do with nonfederal courts, and an agency of the federal judicial branch

---

[8] What legislative history exists aids us little in this inquiry. 100 Cong. Record 10283 (1954).

which provides absolutely no financial support to the Territorial Court.

The Territorial Court, however, does not rest its entire position on the interpretation of § 1544. It also asserts that the Inspector's authority granted to him by virtue of § 1599 is not inclusive of either the judicial or the legislative branch of the territorial government.

The relevant language here is broad and sweeping. The Inspector is given authority to audit "the government of the Virgin Islands" and his power "extend[s] to all activities of the government of the Virgin Islands . . ." see supra at note 2. We note that there is no limiting language in these phrases. Elsewhere in the Revised Organic Act where Congress made reference to the branches of the Territorial government, it did so specifically. See 48 U.S.C. §§ 1571, 1591, 1611. We presume, therefore, that if Congress wanted to limit the Inspector's authority to the executive branch of the government of the Virgin Islands it would have explicitly done so. Cf., Russello v. United States, 464 U.S. 16, 23 (1983) (where Congress includes particular language in one section of a statute, but omits it in another section of the same Act it is generally presumed that Congress acted intentionally and purposely in the disparate inclusion or exclusion) (quotation omitted).

Indeed, if we look to the ordinary meaning of the word "government", we find that the judicial and legislative branches are not necessarily excluded. Black's Law Dictionary 5th Ed. (1979) states at 625: . . . [i]n the United States, government consists of the executive, legislative and judicial branches . . . and it defines a governmental act as "[a]n act in exercise of the police power, or in exercise of constitutional, legislative, administrative or judicial power . . . . *Id.* at 626.

 Moreover, nothing in the predecessor act suggests that the government comptroller's activities were limited to the executive branch of the territorial government.[9] In fact, that office audited

---

[9] That statute provides in relevant part:
> The Secretary of the Interior shall appoint in the Department of the Interior a government comptroller for the Virgin Islands who shall be under the general supervision of the Secretary of the Interior and shall not be part of any executive department in the government of the Virgin Islands.
>
> . . .
>
> The government comptroller shall audit all accounts and review and recommend adjudication of claims pertaining to the revenue and receipts of the

the then Municipal Court of the Virgin Islands on several occasions. Congress is assumed to be familiar with the results of its legislation and the practices of the agencies that it has created, so that subsequent legislation which does not alter that practice is considered to sanction that practice. See, e.g., Acker v. United States, 620 F.2d 802, 806 (Ct. Cl. 1980); cf., James v. O'Bannon, 715 F.2d 794 (3d Cir. 1983), cert. denied sub nom. James v. Cohen, 470 U.S. 1050 (1985). It is undisputed that the Insular Areas Act did not lessen the scope of the Inspector's oversight authority from that of the predecessor government comptroller. See note 2. Therefore, we find no ambiguity in the phrase "Government of the Virgin Islands", and we have no occasion to apply other aids in construing the statute at hand. United States v. Turkette, 452 U.S. 576 (1981) on remand, 656 F.2d 5 (1st Cir. 1981). As a result, we hold that the Inspector's authority to audit encompasses the Territorial Court.

### 3. Scope of the Inspector's Subpoena

The Territorial Court alleges that the Inspector will perform ultra vires acts. To prove this, it seeks discovery.[10]

---

government of the Virgin Islands and of funds derived from bond issues, and he shall audit, in accordance with law and administrative regulations, all expenditures of funds and property pertaining to the government of the Virgin Islands, including those pertaining to trust funds held by the government of the Virgin Islands.

. . .

All departments, agencies, and establishments shall furnish to the government comptroller such information regarding the powers, duties, activities, organizations, financial transactions, and methods of business of their respective offices as he may from time to time require of them; and the government comptroller, or any of his assistants or employees, when duly authorized by him, shall, for the purpose of securing such information, have access to and the right to examine any books, documents, papers, or records of any such department, agency, or establishment. (July 22, 1954, ch. 558, § 17, 68 Stat. 504; Aug. 28, 1958, P.L. 85–851, §§ 4, 5, 72 Stat. 1094, 1095; Mar. 20, 1962, P.L. 87–421, 76 Stat. 43; Aug. 24, 1968; P.L. 90–495; § 9, 82 Stat. 840; Oct. 15, 1977, P.L. 95–134, Title III, § 301(a), 91 Stat. 1162.)

[10] "The granting or denial of discovery in a subpoena enforcement case is within the discretion of the district Court." United States v. Merit Petroleum, Inc., 731 F.2d 901 (TE Ca. 1984) (Citations omitted). See also NLRB v. Interstate Dress Couriers, Inc., supra. Where as here the issues are largely legal and the factual contentions irrelevant, no discovery is warranted. We see no material issue which requires such discovery. Cf., Moutevelis v. United States, 727 F.2d 313, 315 (3d Cir. 1984).

299

■ We recognize that our role here is only to determine whether the court's process would be abused by enforcement of the subpoena. S.E.C. v. Wheeling-Pittsburg Steel Corp., 648 F.2d 118, 125 (3d Cir. 1981). Absent the Territorial Court putting in issue the good faith of the Inspector, the subpoena must be enforced if relevant. Westinghouse, supra at 166; cf., NLRB v. Interstate Dress, supra.

The Territorial Court, however, fails to challenge the relevance of the information sought by the Inspector, and it does not allege that the subpoena is burdensome or overbroad. In any case, our view of the information sought suggests both relevancy and propriety of scope.

At most, the Territorial Court challenges the objectives of the audit; but we note that this does not go to the relevancy or the scope of the documents subpoenaed. Nothing in the record informs this Court how the subpoenaed documents are tied to improper objectives.

■■ Rather, what we have is an assertion that because the indirect audits of the Territorial Court were allegedly performed contrary to the Inspector's rules and regulations, this present audit will also be so conducted. This issue is not relevant at this stage. Summary enforcement hearings are not intended to be exhaustive inquisitions into the practice of regulatory agencies. Merit Petroleum, supra at 906. We also fail to see how discovery of the Inspector's past practices vis-a-vis indirect audits of the Territorial Court bears on whether he conducts this direct audit according to law. The plaintiff will have timely opportunity in the future to address such a contention if violations of law or administrative rules take place.

## III. CONCLUSION

We conclude that nothing in the doctrine of separation of powers, the Revised Organic Act of 1954, or the Insular Areas Act of 1982 precludes the Inspector from conducting its proposed audit of the Territorial Court or issuing the subpoena at issue here. Since it is not alleged that the subpoena is overbroad, burdensome or that it seeks irrelevant material, it will be enforced. The Territorial Court's arguments having been rejected on the merits, and this Court having no independent basis for jurisdiction over its claim, its complaint seeking declaratory and injunctive relief will be

dismissed. Its motions to quash the subpoena, for injunctive relief and for discovery will also be denied.

## ORDER

THESE MATTERS having come before the Court on motion of the defendants for summary enforcement of the subpoena duces tecum directed to the plaintiff, and on motions of the plaintiff for injunctive relief, to quash the subpoena and for discovery, and the Court having filed its opinion of even date herewith, and the premises considered, now therefore it is ORDERED:

THAT the defendants' application for summary enforcement of the January 29, 1987, subpoena duces tecum directed to the plaintiff be, and the same, is hereby GRANTED; and further

THAT the Territorial Court of the Virgin Islands shall comply with that subpoena within 30 days of the date of this order or by a later alternative date designated by the defendants.

It is further ORDERED:

THAT the plaintiff's motions for injunctive relief, to quash the subpoena and for discovery be, and the same, are hereby DENIED; and further

THAT the plaintiff's complaint is DISMISSED, WITH PREJUDICE.