**RAFAEL GARCIA, M.D., Plaintiff**

v.

**THE GOVERNMENT OF THE VIRGIN ISLANDS, DEPART-
MENT OF HEALTH, BOARD OF MEDICAL EXAMINERS,
DEBORAH McGREGOR, M.D., COMMISSIONER OF
HEALTH and CORA CHRISTIAN, M.D., ASSISTANT COM-
MISSIONER OF HEALTH AND CHAIRMAN OF THE
BOARD OF MEDICAL EXAMINERS, Defendants**

Civil No. 865/1988

Territorial Court of the Virgin Islands

Div. of St. Croix at Kingshill

February 13, 1989

131

LEE J. ROHN, ESQ., St. Croix, V.I., *for plaintiff*

TRESTON MOORE, ESQ., Principal Assistant Attorney General (Justice Department), St. Thomas, V.I., *for government*

STEPHEN Q. MITCHELL, ESQ., Assistant Attorney General (Justice Department), St. Croix, V.I., *for government*

PETERSEN, *Judge*

## MEMORANDUM OPINION

Plaintiff has instituted this action for injunctive relief and damages against the Defendants. At the close of the plaintiff's case, the defendants moved for a dismissal or Summary Judgment. For the reasons herein stated, this matter is remanded to the Board of Medical Examiners and dismissed as to Deborah McGregor, M.D., Commissioner of Health, Cora Christian, M.D., Assistant Commissioner of Health and Chairman of the Board of Medical Examiners.

# I.

## ISSUE

Whether the plaintiff, Dr. Garcia, should be granted a license to practice medicine in the Virgin Islands is the issue presented herein.

# II.

## FACTS

In order to place this issue in context, it is necessary to review the factual background of this most unfortunate case.

The plaintiff, a native born Virgin Islander, received his undergraduate degree from the University of Puerto Rico, an accredited American University. He obtained his medical degree from the University of Barcelona, a World Health Organization recognized medical school. Plaintiff completed a one-year internship in Hospital Del Maestro, Hato Rey, Puerto Rico in 1973 and a Rotating Internship in San Juan Municipal Hospital in 1974 and obtained a license to practice medicine in Puerto Rico in 1975.

Plaintiff commenced his employment with the Virgin Islands Department of Health (Health) as a public health physician in 1976.

In order to practice medicine, plaintiff was given an initial temporary six-month license, which was automatically renewed every six months by Health's Commissioners.

Plaintiff's last temporary license was issued on September 11, 1986 and expired on March 10, 1987. It was not renewed, reissued or extended. Between 1976 and 1986, plaintiff did not submit any application to the Virgin Islands Board of Medical Examiners (Board) in order to obtain any of the renewals of the temporary license.

Plaintiff worked exclusively for the Virgin Islands Government until 1982 when he opened his private practice in the town of Frederiksted.

In February, 1988, Health implemented a Medical Licensure Adjustment Strategic Plan (Plan) for the express purpose of ensuring that only qualified doctors would be permitted to practice medicine within the Virgin Islands. This Plan involved the feasibility of extending temporary licenses to physicians eligible for permanent license, but not yet licensed in the Virgin Islands. These physicians were placed in three categories allegedly based upon their qualifications for permanent licensure in the Virgin Islands.

Group I is comprised of those physicians not eligible for permanent licensure. Group I physicians are those who have not taken the Educational Council for Foreign Medical Graduates (ECFMG) a test required of foreign medical graduates before they can become eligible for American Medical Association (AMA) approved internships. These doctors are required to obtain additional medical training before they can become eligible for Virgin Islands licensure. The temporary licenses of Group I physicians have been or are expected to be terminated.

Group II is comprised of those physicians who are not eligible for Virgin Islands licensure. These physicians have ECFMG but no AMA approved training.

Group III is composed of those physicians who have taken the ECFMG exam or National Boards certification and who have AMA approved training.

Plaintiff was placed in Group I. When his temporary license expired in March, 1987, it was not renewed. Plaintiff contends that he was erroneously placed in Group I even though his credentials and experience qualify him for Group III status. Plaintiff likewise contends that his background meets the requirements of the Fifth Pathway program, which waives the ECFMG requirement.

Plaintiff failed to pass the ECFMG examination after several attempts. Although plaintiff contends that he has met the requirement for the Fifth Pathway, he has never submitted to the Board or Health a Fifth Pathway Certificate from an AMA approved medical educational institution (which the AMA recognizes as a possible alternative to the ECFMG).

When in February, 1988, Plaintiff was placed in Group I, he sought a hearing as to the reasons for such placement and, in March, the Health Commissioner responded that a follow-up review by the medical panel would be scheduled.

Before a hearing was scheduled, however, the plaintiff was informed, in July, by Dr. Christian that his prescription writing privileges were curtailed to the extent that his prescriptions had to be countersigned by a licensed physician before they could be issued.

Plaintiff thereupon instituted this action in October, 1988. Upon the recommendation of this Court, the Court hearing was postponed to permit the plaintiff to present his case to the Board. After a hurriedly scheduled Board hearing, attended by the plaintiff and his counsel, the Board examined or reviewed plaintiff's documents

or credentials. Thereafter, plaintiff and his attorney were notified by letter that plaintiff did not possess the requisite qualifications for licensure; specifically they alleged that he did not have the required ECFMG certification. No rules, procedures or guidelines were established for conducting the Board's hearing; neither was the hearing recorded.

After the Court hearing in December and before a decision was rendered, Act. No. 5402 was passed repealing 27 V.I.C. §§ 36, 37, 38, 33(1) and amending 27 V.I.C. §§ 35(a) and 39.

## II.

## DISCUSSION

One of plaintiff's contentions is that the Board's refusal to grant him a license to practice medicine evinces a discriminatory policy with respect to the evaluation of his credentials. He contends that other individuals with similar credentials were permitted a permanent license.

The plaintiff has failed to present a prima facie case to support this contention. Plaintiff's duly admitted exhibits refute his claim that there were other physicians with similar credentials who were granted a license by reciprocity or who were granted a license to practice medicine without satisfying the Fifth Pathway requirement.

Plaintiff also contends that he was denied procedural due process by the Board. His temporary license to practice medicine expired by its own terms on March, 1987. No further license was automatically issued. Whether or not there is a specific statutory entitlement to a hearing before the issuance of a temporary license is not made clear by the statutes involved. Moreover, it is well established that the right to a hearing attaches only when liberty or property interests are implicated. Due process does not require a hearing when an individual has a mere expectation in a property interest. Valdes v. New Jersey Board of Medical Examiners, 501 A.2d 170 (1985). In Mehane v. Board of Medical Examiners, 268 S.E.2d 112 (1982) where three temporary licenses were given to the plaintiff, and plaintiff sought injunctive relief to prevent revocation of her license, the court stated:

It is clear from the face of the licenses issued to plaintiff that each one was temporary and expired on the dates shown on the documents. Plaintiff was fully aware that the licenses were

temporary and that the issuan e of a permanent license to practice medicine was conditione 1 upon a finding of competency based upon her passage of FLEX. When she failed to pass FLEX, the last temporary license expired and the Board refused to issue another one. We find nothing to support plaintiff's claim that she is entitled to a permanent license to practice medicine in this state.

The Court further noted:

The action taken by the Board was the denial of issuance of a permanent license to practice medicine to plaintiff. We, therefore, find that plaintiff has no statutory right to a hearing to contest the denial of a permanent license by the Board.

■ Thus, before a temporary medical license is issued, there appears to be no property right which must be safeguarded by due process. See also Stern v. Conn. Medical Examining Board, 545 A.2d 1080 (1988) (State medical licensing board lacked jurisdiction to revoke physician's license where license had expired by lapse of time prior to initiation of revocation proceeding.).

### III.

■ Even assuming arguendo that plaintiff has shown an entitlement to a hearing, the issue now becomes whether the Board's actions satisfied due process. It is well established that a public employee is entitled to procedural due process whenever a governmental action stigmatizes him by either denying employment, or injures his future employment prospects. Cleveland Board of Education v. Laudermill, 470 U.S. 532 (1985).

The plaintiff challenges the sufficiency of the procedural safeguards employed at his hearing. He contends that he was denied discovery of the case against him; an opportunity to present witnesses and evidence on his own behalf; the right to cross-examine adverse witnesses; a fair hearing with established guidelines and standards; a record of the proceedings; rules of evidence; a neutral and detached hearing panel and written findings of fact and conclusions.

■ As to plaintiff's claim of the denial of the right to cross-examination, it has been considered important and helpful, but it is not always absolute. See Beauchamp v. De Abadia, 779 F.2d 773, 736 (1st Cir. 1985) citing Wolf v. McDonnell, 418 U.S. 539 (1974). Moreover, this Court finds that the procedures used by the Board

included prior notice, right to counsel, and an opportunity to present documents. In addition, the Board's letter to the plaintiff and his attorney, though not in strict legal form, was adequate to apprise the plaintiff of its findings and the basis for the decision rendered.

■ Plaintiff likewise contends that he was denied an impartial hearing panel. An impartial decision maker is a fundamental component of due process. Beauchamp v. De Abadia, 779 F.2d 733 (1st Cir. 1985). Plaintiff contends that Dr. Cora Christian's participation in the Board's deliberations deprived him of an impartial hearing. Plaintiff contends that the fact that Dr. Christian has a medical practice in Frederiksted and he also maintains his medical practice in Frederiksted creates a conflict of interest and, hence, a bias against him. The fact that a physician practices medicine in the same geographical area as an applicant before the Board, without more, cannot under the circumstances presented here, support a claim of conflict of interest. If that were so, when one considers the geographical size of St. Croix, all physicians would have to be disqualified from sitting on the Board. It must be noted that 27 V.I. R&R § 2-11 provides that "Membership on the Board shall be limited to practitioners who possess a valid Virgin Islands license."

■ Particularly troublesome, however, is the failure of the Board to promulgate adequate rules of procedure and have its bylaws as mandated by statute. Fortunately, this factor has not denied the plaintiff his procedural due process. The Board's actions and activities fell short of a full fledged hearing; but it cannot be said that the hearing was so woefully inadequate under the circumstances as to constitute a denial of due process. The flexible standard is applicable here.

## IV.

The plaintiff also contends that the Board's actions in inviting him to return to St. Croix and in renewing his temporary license estop the Board from now refusing to issue him a license to practice medicine.

The Restatement (Second) of Torts § 894(1) (1979) provides, in relevant parts, as follows:

> (a) If one person makes a definite representation of fact to another person having reason to believe that the other will

reply upon it and the other in reasonable reliance upon it does an act ... the first person is not entitled ....

(b) to regain property or its value that the other acquired by the act if the other in reliance upon the misrepresentation and *before discovery of the truth has* so changed his position that it would be unjust to deprive him of that which he thus acquired.

The Supreme Court in Heckler v. Community Health Services of Crawford, 467 U.S. 64 (1984) has taught us that to analyze the nature of a private party's detrimental change in position, it is necessary to identify the manner in which reliance on the Government's misconduct has caused the private citizen to change his position for the worse. In this case, the consequences of the Government's misconduct were not entirely detrimental to the plaintiff. He did receive a temporary license for approximately twelve years. His true detriment is the inability to obtain another temporary license contrary to the plain meaning of the old statute involved.[1] "When a private party is deprived of something which it was entitled of right, it has surely suffered a detrimental change in its position." Heckler v. Community Health Services of Crawford, 467 U.S. 64 (1984). There is no doubt that in order to have obtained a license plaintiff had to satisfy the statutory requirement.

The Supreme Court in Heckler also noted that an "[E]stoppel is an equitable doctrine invoked to avoid injustice in particular cases." Before this Court would apply this doctrine, however, it must be satisfied that the plaintiff was unaware of the law governing the procedures for obtaining a license, and he had no means by which with reasonable diligence he could have acquired that knowledge. The evidence, however, belies plaintiff's lack of knowledge. On several occasions plaintiff attempted to comply with the requirements of taking the ECFMG.

If plaintiff remained unenlightened by not using the means at his disposal to ascertain the statutory requirements for obtaining a license to practice medicine in the Virgin Islands, he cannot now

---

[1] Plaintiff failed to present any evidence of the Board's recommendation for the issuance of the temporary license. Moreover, the term "temporary" has been commonly understood to mean "a limited time" and no interpretation should be given to a statute that would render an absurd result. To interpret the old statute as granting continuous renewal of a license for a period covering twelve years flies in the face of the plain meaning of the term "temporary." This Court finds that Health's interpretation of the old statute, as reflected by its practices, is not entitled to deference inasmuch as its position is inconsistent with the plain words of the statute.

claim to have been effectively misled by relying upon the Government's agents. 3 J. Pomeroy, Equity Jurisprudence § 810 P. 219.

██ ██ Those who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to law. Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380 (1947). The plaintiff had a duty to familiarize himself with the statutory requirements for obtaining a license. As the Court so aptly stated in Federal Crop Insurance Corp. v. Merrill, 332 U.S. at 384,

> Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority.

Justice Holmes wrote: "Men must turn square corners when they deal with the Government." Rock Island, A. and L.R. Co. v. United States, 254 U.S. 141, 143. (1920).

There is one additional consideration of public policy when a party seeks to estop the Government. "If the Government is unable to enforce the law because of estoppel, the interest of the citizenry as a whole in obedience to the rule of law is undermined." Heckler v. Community Health Services of Crawford County, Inc., 467 U.S. at 64.

## V.

██ The primary object in construing a statute is to give effect to the intention of the Legislature. The Legislature has recognized the hardship to doctors who have worked in this territory for many years and who are ineligible to take the examination for a license solely because these doctors have failed to meet the standards prescribed by 27 V.I.C. § 34 et seq.[2] Moreover, it appears fairly obvious that the Legislature had actual knowledge of the pendency

---

[2] At the Committee of the Whole hearing on Act 5402 the following exchange occurred:

SENATOR BELL: So Dr. Garcia did not get a license. He was practicing all the time now they stopped him from practicing. He has been practicing for ten years. This doesn't apply to Dr. Garcia. He will no longer have his practice. So you go to Puerto Rico or they pass them out to the other doctors and they will take his clients. This is not going to take care of Dr. Garcia's problem. It's going to destroy him and his family. That's what this is going to do. This has to be amended to take care of those people.

of this case.[3] In addition the legislature is presumed to have investigated the licensing question for itself to ascertain what credentials are sufficient for the good of the profession and the public.

 Act. No. 5402 affords the best means of its exposition and the legislative intent must be determined from the language used. This case must be decided under the law in force at this time. "A court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." Bradley v. School Board of the City of Richmond, 416 U.S. 696, 711 (1971). See also Illinois Chiropractic Society v. Grillo, 164 N.E.2d 47 (1960). (Wherein the Court noted that where the legislature has changed the law pending an appeal, the case must be disposed of by the reviewing Court under the law as it then exists and not as it was when the decision was made by the trial court.)

This Court is bound to determine the applicability of Act 5402 to the present proceedings. The relevant portions of Act 5402 provide as follows:

> Section 38(a). Issuance of licenses by Board. The Board of Medical Examiners upon due consideration that all administrative and clinical requirements have been met shall issue the appropriate licenses under this Subchapter to each qualified applicant, and

> (f)(i) Notwithstanding Title 27, Chapter 1, Subchapter II, VIC and upon due consideration of the Board of Medical Examiners that the requirements of this subsection have been met, the Secretary of the Board shall within 90 days of enactment of this Section issue a permanent license to all eligible physicians.

The Board has the grave responsibility to protect the health of the public by assuring that all doctors are qualified before issuing licenses. Hence, the Board is now fully vested with the power and

---

[3] SENATOR REDFIELD: ... For the purposes of this section, "eligible physician" means a person who: "then we get on to the section there where there was some difficulty in that court case. Is all the way down there you got a, b, c, d, e, f, you get down to g," has an active license to practice medicine in any state, territory, commonwealth or possession of the United States. This particular doctor was licensed in Puerto Rico.

. . .

SENATOR MAGRAS: Senator Bell, Dr. Garcia is taken care of in this bill ....

duty to determine whether the plaintiff is entitled to the benefits of Act 5402 and, if qualified, to issue him a license.

In view of the foregoing, this matter is remanded to the Board for a determination as to whether the plaintiff has met all of the administrative and clinical requirements and, if it so concludes, then the Board is mandated to issue the appropriate medical license forthwith.

## ORDER

IN ACCORDANCE with this Court's Memorandum Opinion dated February 9, 1989, it is herein

ORDERED that this matter be and is hereby REMANDED to the Virgin Islands Board of Medical Examiners, Government of the Virgin Islands; and it is further

ORDERED that this matter be and is hereby DISMISSED as to Defendants Deborah McGregor, M.D., Commissioner of Health and Cora Christian, M.D., Assistant Commissioner of Health and Chairman of the Board of Medical Examiners.