**ERMINE JEFFERS, NOEL JEFFERS, and CHANE JEFFERS, by and through his Mother and Next Friend, ERMINE JEFFERS, Plaintiffs**

**v.**

**MERIDIAN ENGINEERING, INC., RISING STONE, INC. d/b/a/ GIDEON'S WATER SERVICE and GIDEON SMALL, Defendants**

Civil No. 263/1990

Territorial Court of the Virgin Islands

Div. of St. Croix at Kingshill

May 19, 1992

H. A. CURT OTTO, ESQ. (BURTON & OTTO), Christiansted, St. Croix, V.I., *for plaintiffs*

LAD MINGUS, ESQ. (LAW OFFICES OF R. ERIC MOORE), Christiansted, St. Croix, V.I., *for defendant Meridian*

CABRET, *Judge*

## MEMORANDUM OPINION

The plaintiffs originally filed suit for personal injury and property damage stemming from a car accident that occurred on April 21, 1989. Trial on the merits was held on September 16th through 20th, 1991, and at the end the jury returned a verdict for the plaintiffs in the sum of $50,000.00, undiminished by reimbursements from collateral sources. Defendant Meridian Engineering, Inc., was found by the jury to be 33% negligent, and defendant Gideon Small was found to be 67% negligent. This latest controversy was spawned by the proposed judgment submitted by Meridian, which apportions enforceability of the jury verdict based upon the percentage of negligence attributed to each defendant. On the other hand, the proposed judgment submitted by the plaintiffs would enable them to collect the full judgment from Meridian.

## DISCUSSION

## I. 5 V.I.C. § 1451 Erodes Joint and Several Liability

The source of the present altercation is the parties' different interpretations of 5 V.I.C. § 1451 (hereafter referred to as "§ 1451").[1] The first prong of the plaintiffs' argument attempts to convince the court that despite the plain language of subsection (d), the focus of the statute is the elimination of the bar to recovery in contributory negligence, and not the elimination or erosion of the rules of joint and several liability. In support of their argument, plaintiffs point to the fact that almost every provision of § 1451 is placed within the context of a defendant proving that there was contributory negligence on the part of a plaintiff. Plaintiffs also claim that the heading of § 1451—"Damages where contributory negligence has been proven"—is an important tool in interpreting the statute, and that this section heading shows that the statute is not at all concerned with changing the common law rules with regard to joint and sev-

---

[1] Section 1451 states, in pertinent subsections, as follows:

§ 1451. Damages where contributory negligence has been proven

(a) In any action based upon negligence to recover for injury to person or property, the contributory negligence of the plaintiff shall not bar a recovery, but the damages shall be diminished by the trier of fact in proportion to the amount of negligence attributable to the plaintiff. The burden of proving contributory negligence shall be on the defendant. If such claimant is found by the trier of fact to be more at fault than the defendant, or, in the case of multiple defendants, more at fault than the combined fault of the defendants, the claimant may not recover.

(c) The trier of fact shall report by general verdict the total damages, in dollars and cents, not reduced by any contributory negligence of plaintiff, and if plaintiff is found to be contributorily negligent, shall also report the amount to which the damages are reduced by reason thereof, in dollars and cents, in which case the lesser monetary amount shall be the final verdict in the case.

(d) Where recovery is allowed against more than one defendant the trier of fact shall apportion, in dollars and cents, the amount awarded against each defendant. Liability of defendants to plaintiff shall be joint and several but, for contribution between defendants, each defendant shall be liable for that portion of the verdict as the trier of fact has apportioned against such defendant; provided, however, no defendant in a cause of action concerning a motor vehicle accident shall be responsible for any judgment entered in favor of the plaintiff greater than the amount of negligence apportioned to such defendant unless the negligence of the defendant shall be greater than 50 percent, in which case the defendant shall be responsible for the total amount of the judgment entered in favor of the plaintiff, less any percentage of contributory negligence attributed to the plaintiff.

eral liability. In addition, plaintiffs assert that the legislative history of the statute shows that its purpose was solely to abolish contributory negligence as a bar to recovery, and "the fact that the additional language was placed in the contributory negligence statute makes its application in the instant case impermissible . . . Had the Legislature wished to abrogate the general rule of joint and several liability in automobile accidents a separate statute would have logically been created." (Plaintiffs' Motion to Clarify, p. 6).

■ It is true, as the plaintiffs argue, that at common law joint tortfeasors are jointly and severally liable for damages to the plaintiff. In 74 Am. Jur. 2d Torts § 76, 684 (1974), it is said that:

> The overwhelming weight of authority is to the effect that in the absence of statutory authorization, no apportionment of compensatory damages may be incorporated in the judgment establishing the liability of joint tortfeasors, generally on the theory that the plaintiff should not be denied the possibility of collecting the full amount of his judgment from any one of the defendants.

(Footnotes omitted).

■ In the Virgin Islands, statutory authority for incorporating an apportionment of damages into the judgment establishing liability is found in § 1451(d). The Court is not persuaded by the plaintiffs' contrary interpretation of that statute. Although statutes in derogation of the common law must be strictly construed, this does not mean that the language used in the statute should be interpreted to frustrate its clear purpose. In re Estate of Moolenaar, 24 V.I. 234 (Terr. Ct., St. Thomas 1989). In the first instance, the purpose of interpreting the statute is to give effect to the intent of the legislature. See Garcia v. Government of the Virgin Islands, 24 V.I. 131 (Terr. Ct., St. Croix 1989). The language itself is the best evidence of the legislative intent, and there is a presumption that the legislative intent is expressed by the ordinary meaning of the words used. See Barnes v. Cohen, 749 F.2d 1009, 1013 (3d Cir. 1984), Territorial Court v. Richards, 23 V.I. 285, 296 (D.C.V.I. 1987). Furthermore, "[i]t is a cardinal rule of statutory construction that when the language of a statute is clear, a court should look no farther than those words in interpreting the statute." Danbury, Inc. v. Olive, 22 V.I. 183, 185 (D.C.V.I. 1986).

■■ The plain language of § 1451(d) undoubtedly modifies the common law rule of joint and several liability insofar as apportion-

108

ment of damages in cases involving automobile accidents are concerned. The statute clearly states that liability among joint tortfeasors is several where each of two defendants is found to be 50% negligent, or where there are three or more defendants and each of their liability is found to be 50% or less. A co-defendant in a case involving an automobile accident is no longer liable to the plaintiff for the entire judgment if the jury finds him less than 50% negligent in causing the plaintiff's injury. In such a case the co-defendant will be liable only for the amount of damages corresponding to the percentage of negligence attributed to him by the jury. However, the plaintiff may nonetheless enforce the entire judgment against the other defendant who is found to be more than 50% negligent, and thus primarily liable for the plaintiff's injury. Hence, the plain language of § 1451 makes clear that in cases involving automobile accidents, the common law rule of joint and several liability has in fact been eroded.

■ Plaintiffs' argument that the section heading to § 1451 describes that statute's sole purpose is not supported by Virgin Islands law. While in some jurisdictions the section headings and titles may be an important tool in the construction and interpretation of statutes, the Virgin Islands Code expressly provides otherwise. 1 V.I.C. §§ 44, 45.[2] Furthermore, it does not necessarily follow, as the plaintiffs contend, that had the Legislature wished to abrogate the general common law rule of joint and several liability in automobile accidents, a separate statute would have logically been drafted. In this Court's view, tort reform concerning the doctrines of comparative negligence and joint and several liability go hand in hand. But, even indulging the plaintiffs' argument, this type of

---

[2] 1 V.I.C. § 44 provides as follows:

The classification and organization of the titles, parts, chapters, subchapters, and sections of this Code, and the headings thereto, are made for the purpose of convenient reference and orderly arrangement, and no implication, inference, or presumption of a legislative construction shall be drawn therefrom.

1 V.I.C. § 45 provides in pertinent part as follows:

(a) The following matter does not constitute part of the law—

(1) the various analyses set out in this Code, constituting enumerations or lists of the titles, parts, chapters, subchapters and sections of this Code;

(2) the descriptive headings or catchlines, other than the section numbers contained therein, immediately preceding the texts of the individual sections of this Code . . .

draftsmanship is not uncommon to the Virgin Islands Code. A particularly egregious example is found in the Homestead Exemption Statute. 33 V.I.C. § 2305. The statute is almost exclusively concerned with tax exemptions, yet in Todman v. Todman, 15 V.I. 518 (3d Cir. 1978), the Court recognized that the last sentence of § 2305(d) is the only provision in the Virgin Islands Code empowering the courts in divorce proceedings to dispose of a marital homestead. Surely, this authorization would have been more strategically placed in Title 16, but as Todman pointed out, no implication, inference or presumption is to be drawn from the placement of any section in the Code. Id. at 526. Hence, plaintiffs' arguments lack merit.

## II. § 1451 Is Not Ambiguous

Plaintiffs also contend that the phrase in the statute referring to "a cause of action concerning a motor vehicle accident" could mean any cause of action even remotely concerning an automobile accident, or it could be limited to those causes of action that solely involve the negligence of motor vehicle operators; therefore, the phrase should be narrowly construed, the latter approach adopted, and plaintiffs excepted from its reach. The fact that particular scenarios could be advanced which may put the application of the statute in doubt does not make the statute ambiguous. Indeed, many statutes are subject to this type of attack. As far as this case is concerned, it falls squarely within reach of the statute where the plaintiff was injured while operating her automobile and as a result of a collision with another vehicle.

## III. § 1451(d) Does Not Violate the Equal Protection Clause

The second prong of the plaintiffs' argument is that § 1451(d) is unconstitutional because it violates the Equal Protection Clause of the United States Constitution as it creates at least seven different classes. "The basic requirement of an Equal Protection Clause claim is that there be governmental action creating a classification that burdens one class and benefits another." General Offshore Corp. v. Farrelly, 25 V.I. 226, 253 (D.C.V.I. 1990). There is no doubt that the statute creates various classes and subclasses. Class I might be said to consist of plaintiffs injured in automobile accidents, and Class II consist of plaintiffs injured in non-automobile related accidents. Class I may be subdivided depending on the percentage of negligence attributable to each defendant.

 In analyzing any equal protection challenge to a statutory classification however, courts direct the strictest scrutiny to classifications based on suspect groups or those that interfere with fundamental rights. See Id. Intermediate scrutiny is given to classifications based on gender or legitimacy. Classifications which do not entail any of these suspect forms or interfere with fundamental rights are subject to the most lenient scrutiny, which is known as the "rational basis test". See Id. Undoubtedly, this case does not involve a fundamental right or a suspect classification, therefore the rational basis test is the standard by which the constitutionality of the statutorily created classification must be determined. See Caman v. City of Stamford, 746 F. Supp. 248 (D. Conn. 1990) (rational basis test used to determine constitutionality of a statute modifying the doctrine of joint and several liability). In other words, the constitutionality of the statutory scheme will be upheld against an equal protection challenge if the classification created by the statute has a rational basis that furthers a legitimate governmental interest.

The particular provision in § 1451(d) at issue was added to the statute as part of a series of tort reform legislation enacted in 1986.[3] Throughout the United States reforms were necessary mainly because during the 1980's the insurance industry reacted to a period of growing losses by raising premiums and by canceling or refusing to renew or issue certain high-risk policies. As a result of these actions, many businesses and municipal governments, as well as private citizens, were forced to either reduce services or, in the case of businesses and private citizens, go uninsured. This inability to obtain insurance became known as the insurance crisis. See Note, 1986 Tort Reform Legislation: A Systematic Evaluation of Caps on Damages and Limitations on Joint and Several Liability, 73 Cornell L. Rev. 628 (1988). Not surprisingly, when considering tort reform legislation of their own, Virgin Islands legislators were very concerned about the impact of the insurance crisis in the Virgin Islands and of ways of alleviating the crisis. This concern is illustrated in the following excerpt from the Legislature of the Virgin Islands Regular Session on June 6, 1986:

> Senator Magras: Thank you, Mr. President. Mr. President, the question that is facing us with this entire insurance crisis is

---

[3] See 1986 V.I. Sess. Laws 179, § 1(e).

111

whether this problem will arrest iteslf [sic], or whether in fact lawmakers should step in and take action. And I think most of us are convinced that in fact something must be done. The one factor that has not been addressed during this entire insurance crisis is that we have not made an attempt to educate the public. We have a public that loves to sue. It's easy to jump into court. And the court system has become an instant lottery for those who make it up. And it is unfortunate. But the one thing that we have not done is tried to change the general attitude of our public. There is no doubt that there are three factors which have to be addressed in order to relieve the insurance crisis. One is the unpredictability of judicial awards, the size of the awards, and of course, the general nature of American society to go to court and sue so easily. We have tried throughout this crisis. The gravity of the situation calls for us to gather as much information as we possibly could. And during this crisis, we found that in fact very little information was available. So it made the job even harder, more difficult for us to sit and evaluate. And the public were [sic] out there saying we were dragging our feet. But in fact, we were not. Those of you who worked on this problem knows [sic] that many long hours went into the positions we have taken. There is no foot dragging as far as this insurance crisis is concerned.

What the legislators came up with was tort reform legislation which included an amendment of § 1451(d) to modify the common law doctrine of joint and several liability in cases involving automobile accidents.[4]

 The plaintiffs do not dispute that the government has a legitimate interest in regulating and protecting the availability of insurance in the Virgin Islands, rather they assert that the classes created by the statute are irrational and overbroad. This, however, is not the relevant inquiry. The Court is in no way concerned with wisdom or utility of the legislative action. The relevant inquiry is whether the Legislature could have reasonably concluded that the challenged classification would promote a legitimate governmental purpose. See Hancock Industries v. Schaffer, 811 F.2d 225 (3rd Cir. 1987). In Davis v. Omitowoju, 883 F.2d 1155, 1158 (3rd Cir. 1988), in upholding the constitutionality of a Virgin Islands statute placing a

---

[4] See 1986 V.I. Sess. Laws 179.

cap on the amount a plaintiff could recover in a malpractice action, the Court stated as follows:

> Clearly the Virgin Islands' decision to curb, through legislation, the high costs of malpractice insurance and thereby promote quality medical care to the residents of the islands, provides a rational basis for capping the amount of damages that can be awarded a plaintiff.

██ Likewise, in Caman v. City of Stamford, supra, where the Court was called upon to decide an equal protection challenge to a Connecticut statute abrogating the doctrine of joint and several liability, the Court held as follows:

> The objective behind enactment of Tort Reform I was to apportion liability according to responsibility and to insure Connecticut municipalities would be provided continued access to liability insurance coverage. Although a result of enactment of Tort Reform I has been to limit, somewhat, the compensation which tort victims will be able to recover in multiple tortfeasor municipal liability cases, this result is rationally related to the legitimate state objective of insuring continued access to municipal liability coverage for the benefit of future tort victims in Connecticut.

Id. at 746.

Similarly, in the instant case, distinguishing between plaintiffs injured in automobile accidents and other types of torts, and limiting the liability of joint tortfeasors in the former to the proportion of negligence attributable to each, could reasonably be viewed as an incentive to encourage insurance companies to enter the Virgin Islands market and offer insurance at reasonable rates, thus providing continued access to liability insurance for the benefit of future tort victims as well as policy holders. The effect of joint and several liability in joint tortfeasor liability cases has been to hold the insured tortfeasor, who is for example 5% negligent, responsible for 100% of the judgment under the "deep pocket" doctrine.[5] Hence, the non-insured insolvent tortfeasor who is 95% negligent in causing the plaintiff's injuries will in essence be "excused" from liability to the plaintiff. Section 1451 to some extent eliminates this

---

[5] The term "deep pocket" refers to a person or corporation of substantial wealth and resources from which a claim or judgment may be made. Black's Law Dictionary 415 (6th ed. 1990).

perceived inequity.[6] Insurers of the solvent joint tortfeasor, at least in cases involving automobile accidents, will no longer be forced to, in effect, retroactively insure the insolvent joint tortfeasor with whom they did not contract and who is primarily liable for the plaintiff's injury. Thus, there is a rational basis for the classifications created by the statute, and in so holding this Court joins a multitude of other courts that have upheld the constitutionality of similar statutes against equal protection challenges. See Evangelatos v. Superior Court, 44 Cal. 3d 1188, 246 Cal. Rptr. 629 (1988); Smith v. Department of Insurance, 507 So. 2d 1080 (Fla. 1987); Imlay v. City of Lake Crystal, 453 N.W.2d 326 (Minn. 1990); Kavadas v. Lorenzen, 448 N.W.2d 219 (N.D. 1989); Caman v. City of Stamford, supra; Peters v. Saft, 597 A.2d 50 (Me. 1991).

## CONCLUSION

While there may be many unclear and ambiguous statutes strewn throughout the Virgin Islands Code, § 1451(d) is not one of them. The language of § 1451(d) is plain and unambiguous, and applying that section as written does no violence to the statute as a whole. Furthermore, § 1451(d) survives an equal protection challenge because it is rationally related to the furtherance of a legitimate governmental interest.

---

[6] The inequities of a system that places the full burden of restitution on only one of two joint tortfeasors was recognized in Gomes v. Brodhurst, 394 F.2d 465 (3rd Cir. 1967). The Gomes Court stated as follows:

There is no longer a legitimate place in our system, if, indeed there ever was, for a rule of law which places the full burden of restitution upon one who is only in part responsible for a plaintiff's loss. Such a philosophy stems from a more ancient day which more easily intermingled penal and compensatory considerations.

394 F.2d at 467–68. See also Beloit Power Systems. Inc. v. Hess Oil Virgin Islands Corp., 18 V.I. 317 (D.V.I. 1981).