ISAAC RHYMER, Plaintiff

v.

GOVERNMENT OF THE VIRGIN ISLANDS;
DANIEL AMBROSE, Commissioner of Property and Procurement,
HENRY DE LAGARDE, Director of V. I. Land Division,
and VALERIA QUETEL,
Defendants

Civil No. 20-1959

---

GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff

v.

ISAAC RHYMER and VALERIA QUETEL, Defendants

Civil No. 32-1959

District Court of the Virgin Islands

Div. of St. Thomas and St. John
at Charlotte Amalie

July 27, 1959

*See, also, 176 F. Supp. 338*

BIRCH AND MADURO, Charlotte Amalie, Virgin Islands (JOHN L. MADURO, ESQ., of counsel), *for Isaac Rhymer* MAAS AND BAILEY, Charlotte Amalie, Virgin Islands (WILLIAM W. BAILEY, ESQ., of counsel), for *Valeria Quetel*

LEON P. MILLER, ESQ., United States Attorney, Charlotte Amalie, Virgin Islands, *for the Government of the Virgin Islands*

HASTIE, *Circuit Judge*

Two actions are consolidated in this proceeding. Civil No. 20 is an action by Isaac Rhymer against the Government of the Virgin Islands and two of its senior officers who are concerned with the allocation and transfer of homestead plots. The plaintiff asks that the Government be required to transfer to him by proper deed legal title to homestead Plot No. 7 Estate Anna's Fancy. In the action Valeria Quetel has been joined as a third-party defendant and an adverse claimant to the same homestead plot. In her pleading Mrs. Quetel also asks for the adjacent Plot No. 6. In the second action the Government of the Virgin Islands has sued both Isaac Rhymer and Valeria Quetel asking a declaratory judgment to adjudicate various issues and questions which have arisen in the interpretation of homestead laws and restrictions incorporated in the deed under which the Government acquired the Anna's Fancy land for resale as homesteads. Most of these questions are also involved in Civil No. 20, so that the two cases call for decision on essentially the same issues.

The area involved here is a subdivision of Estate Anna's Fancy. Ordinance (Bill No. 311) of the Municipal Council of St. Thomas and St. John, approved November 18, 1953, authorized the Governor of the Virgin Islands to purchase parcels 1 and 2 of Estate Anna's Fancy for subdivision and resale through the Municipal Land Authority in manner consistent with the provisions of the then existing homestead laws. Thereafter the Governor purchased the tract from its private owner under a deed which incorporated restrictions upon resale derived from the Ordinance of November 18, 1953 and the antecedent homestead laws. Although there has been argument here whether the

deed or the statute determines the status and priority to be accorded applicants for plots within the tract in question, this question is academic because, as concerns the problems here involved, the restrictions of the deed and the requirements of the statute are consistent and to an extent overlapping, and both are applicable.

There is no significant conflict in the evidence concerning the circumstances which give rise to the present claims of Isaac Rhymer and Valeria Quetel. Indeed, most of the facts have been stipulated. The Court now finds the essential facts to be as follows:

### FINDINGS OF FACT

1. On November 27, 1953 Elisa Margarita Rosa Morch conveyed parcels 1 and 2 of Estate Anna's Fancy to the Municipality of St. Thomas and St. John by a deed which provided as follows:

"AND the Grantor does restrict this conveyance by the following terms and provisions which it shall be binding upon the Grantee, its successors and assigns, without exception:

"1. That it is the understanding of the parties that the land conveyed herein shall be placed under the jurisdiction of the Municipal Land Authority or a like municipal agency for the purpose of immediate resale to citizens of the Municipality on terms not in conflict with the Land and Home Act or the terms and conditions hereafter enumerated;

"2. That the first opportunity to purchase the land of Anna's Fancy from the Municipality, or the municipal agency in charge of the land, shall go to those persons currently owning and living in superficiary buildings located on Anna's Fancy or leasing land upon which no buildings have been erected. Thereafter, those persons living in rented houses located on the realty shall be given an opportunity to purchase a plot of land of Anna's Fancy;

"3. That the Municipality, or the municipal agency in charge of the property, shall, in the sale of land at Anna's Fancy, give due consideration to requiring the purchasers to relocate buildings, where necessary, for health, sanitary and safety reasons, and with a view to eliminating the present over-crowded con-

dition so as to benefit the community by reason of the improved appearance and atmosphere of the areas;"

2. After purchasing this land the Government of the Virgin Islands, acting through the Municipal Land Authority, undertook to subdivide the tract into homestead plots and to sell them to qualified purchasers in accordance with the restrictions of the Morch deed and the requirements of the homestead laws.

3. When the Municipality acquired the land, and for many years prior thereto, Henry Charles Solomon lived on the site now in controversy as a tenant of the owner. He had constructed there two superficiary houses, one occupied as a home by himself and the other, a house of three rooms, rented to his tenants. Under the recent subdivision of the tract by the Government of the Virgin Islands the house occupied by Solomon as his residence shares Plot No. 6 with a superficiary house owned by Joseph McBean, who is not a part to this litigation. The other house owned by Solomon stands on Plot No. 7.

4. Isaac Rhymer has rented one of the three rooms of the superficiary house on Plot No. 7 from Henry Charles Solomon, and more recently from his heir, for a period of approximately eight years. He continues so to rent and occupy that property. This occupancy is pursuant to an oral agreement originally made between Solomon and Rhymer under which Rhymer has paid and is paying a monthly rental of $6.00.

5. On December 4, 1953 the Municipal Land Authority wrote to Mr. Solomon advising him of the first priority as purchasers accorded to persons owning and living in superficiary houses, and inviting him to execute and return a questionnaire concerning his occupancy of Anna's Fancy property and his interest in purchasing land there. On December 15, 1953 Solomon executed and returned this questionnaire, affirmatively stating his desire to buy the land on which his houses stood. Before further action could be taken in this matter, Solomon died January 11, 1954, leaving his niece, Valeria Quetel as his heir.

6. Valeria Quetel has applied to the Municipal Land Authority to purchase Plot No. 6 and Plot No. 7, reciting that she is the heir of Henry Charles Solomon, the late occupant of the property in question. Mrs. Quetel has also deposited with the Government of the Virgin Islands the selling price of each lot. This money is being held by the Government pending determination of her right to a homestead allotment.

7. In 1950 Valeria Quetel purchased from the Municipality homestead Plot No. 266, Estate Hospital Ground, and in 1956 she sold this lot. Mrs. Quetel presently owns other real property in St. Thomas.

8. The Virgin Islands Land Authority has recognized Isaac Rhymer as one of the class entitled to second priority in the purchase of homestead plots at Estate Anna's Fancy. Accordingly, the Land Authority and Isaac Rhymer have executed an agreement for the sale and purchase of Plot No. 7 Estate Anna's Fancy for a consideration of $209.42 which Rhymer has paid. The delivery of a deed has been withheld pending determination of the questions of Rhymer's entitlement which are raised in this suit.

## DISCUSSION

■ Henry Solomon owned two superficiary houses in the Anna's Fancy area and lived in one of them. He and more recently his heir Valeria Quetel claim to be in the first priority group for the purchase of Anna's Fancy homestead plots, and particularly Plots 6 and 7 of the Land Authority subdivision, on which Solomon's houses stand. Both the Ordinance of November 16, 1953 authorizing public acquisition of the Anna's Fancy tract and the Morch deed conveying the tract to the Municipality provide "(t)hat the first opportunity to purchase the land of Anna's Fancy from the Municipality, or the municipal agency in charge of the land, shall go to those persons currently owning and living in superficiary buildings located on Anna's Fancy or leasing land upon which no buildings have been erected". On its face this language requires that an individual both own and live in a superficiary house within the area in order to be a member of the first described priority group. It has been argued to the Court that the spirit and policy of the homestead laws is best served by interpreting "owning and living in" as if it read "owning or living in". But those living in superficiary houses which they do not own are covered by the second priority of persons "living in rented houses". They would

be covered twice if the first category embraced "owning or living". Thus it was obviously intended that both ownership and residence should concur to entitle the superficiary householder to first priority.

The next point to be noted is that the ordinance and the deed expressly provide that first priority be accorded to persons "currently" owning and living in Anna's Fancy superficiary houses. Normally, "currently" designates the very time of the utterance or the instrument using the word. It is the equivalent to "presently". The Morch deed speaks as of its effective date, November 27, 1953. Therefore, the first priority class is determined by the circumstances of ownership and residence as they existed on November 27, 1953.

It follows that Solomon was entitled to first priority as a homestead purchaser. The question remains whether he was entitled to acquire a particular plot and whether he had a valid claim to more than one plot. Both the statute and the deed authorize the Municipality to require homestead purchasers "to relocate buildings, where necessary, for health, sanitary, or safety reasons, and with a view to eliminating the present overcrowded conditions . . ." It is also significant that in some cases the subdivision as made by the Land Authority shows more than one superficiary house standing on a single plot. Indeed, some of the superficiary houses appear to be so close together as to make it impossible to lay out a homestead plot of suitable area without including more than one house. Moreover, before the Municipality purchased the tract the privilege of placing a superficiary house on the land did not carry with it the possession of any prescribed or defined lot or surrounding area. In these circumstances the ordinance and the deed must have contemplated that in some cases at least a particular applicant would be allotted a plot other than the one on which he resided. Indeed, the draftsmen

69

of the ordinance were careful to speak in general terms of "first opportunity to purchase the land" at Anna's Fancy rather than of opportunity to acquire any particular plot or plots. It may well be that in many cases the applicant will ask for the plot within which he is residing and that as a matter of policy the Municipality will respect such preference. The point here is merely that this is not legally required. In the view of this Court the Municipality has been left free to determine on any fair and reasonable basis how large an area is suitable for each plot in its subdivision, and which plot shall be allocated to each qualified and successful applicant.

■ As concerns another closely related matter, there is nothing in the ordinance or the deed which says or suggests that one who owns more than one superficiary house or has rented a very large area at Anna's Fancy is on that account entitled to a larger homestead than one who had a smaller holding. In subdividing the area and allocating homestead plots the Municipality is left entirely free to determine the economic and appropriate size of homestead plots and to limit each qualified applicant to a single tract deemed appropriate for a homestead.

■ There is a separate question here whether Valeria Quetel inherited any property right in the land in question from Henry Solomon. She could not claim a priority in her own right because at the time of the Morch deed she neither owned nor lived in any house at Anna's Fancy and, indeed, even now she does not live there. But it is argued that she inherited an equitable property interest in a homestead from Solomon and that the Municipality should be required to respect that interest.

In this connection it is pointed out that a liberal policy toward the recognition of interests in land is indicated by the provision of section 1 of Title 28 Virgin Islands Code, that " 'estate and interest in lands' includes every interest,

70

freehold, and chattel, legal and equitable, present and future, vested and contingent." However that may be, there is no doubt but that, if Solomon had lived to enter a contract for a homestead he would thereby have acquired a conventional equitable ownership in land which would have passed to his heir at his death. At the other extreme, if he had died without exercising his personal priority and privilege to acquire a homestead, his mere right to make a homestead claim if he so chose would clearly not have arisen to the status of property. But here, after the Land Authority recognized Solomon as entitled to first priority, he filed with the Land Authority a document in the form of an executed questionnaire which is fairly read as an election and claim by Solomon to acquire an Anna's Fancy homestead, with preference expressed for the sites occupied by his two superficiary houses. In the judgment of this Court that was enough to give Solomon an equitable interest in a yet unassigned homestead plot at Anna's Fancy. This interest passed at his death to his heir and can lawfully be asserted by her. Thus, Mrs. Quetel, having inherited Solomon's equity in a plot to be selected and assigned, is now entitled to an available plot.

■ Isaac Rhymer, as a tenant renting a room in a superficiary house at Anna's Fancy comes within the second priority group as established by the ordinance and the Morch deed. He is one of the "persons living in rented houses" at Anna's Fancy. The statutory language does not require that such a tenant rent an entire house. And no reason appears why the policy of public assistance and preference in home acquisition should not cover the person whose rented place of residence is a single room as well as one who rents and occupies an entire house. Actually, recognizing Rhymer's second priority status, the Land Authority has contracted to sell Plot No. 7 to him. The one possibly conflicting claim is the claim of Mrs. Quetel to a

71

second plot, and it has already been indicated that the law does not give priority purchasers a right to more than one homestead plot. There is no other suggestion here that any first priority purchaser would be deprived of a homestead by the performance of this contract. Accordingly, it is the obligation of the Municipality to honor Rhymer's homestead claim.

Appropriate orders, consistent with this opinion, will be entered in Civil No. 20-1959 and in Civil No. 32-1959.