## IN THE MATTER OF THE ESTATE OF LUCIEN ALON-ZO MOOLENAAR, SR., Deceased

Probate No. 54/1985

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

July 17, 1989

GRUNERT, STOUT, MOORE & BRUCH, ESQS. (SUSAN BRUCH, of counsel), St. Thomas, V.I., *for the Estate*

ESZART A. WYNTER, ESQ., St. Croix, V.I., *for claimant*

CHRISTIAN, *Senior Sitting Judge*

## MEMORANDUM OPINION AND JUDGMENT

### I. INTRODUCTION

This matter is now before the Court on the motion of Andrea Rosemond (hereafter "claimant"), to reverse the decision of the administrator rejecting her claim that she is an intestate heir at law of decedent entitled to take a distributive share in his net estate proportionate to that of each of his three children born in lawful wedlock, on the grounds that he died intestate and she has been legitimated by him pursuant to the provisions of 16 V.I.C. § 462. For the reasons appearing hereafter, the motion will be denied.

### II. FACTUAL BACKGROUND

Lucien Alanzo Moolenaar, Sr., was a bona fide resident of, and died intestate in, St. Thomas, U.S. Virgin Islands, on June 5, 1985. Petition for probate administration of his estate was filed on June 26, 1985. Paragraph 5 of the petition listed as decedent's only known heirs at law, pursuant to 15 V.I.C. § 84(1), Ruth Marie Moolenaar, his widow; and Gwen-Marie Moolenaar, Lucien Alonzo Moolenaar, Jr., and Gwynneth Merle Moolenaar, their three adult children. Letters of Administration were issued to Dr. Lucien Alonzo Moolenaar on June 27, 1985, granting him authority to act as administrator of the estate of his deceased father.

A verified Inventory was filed by the administrator on June 26, 1985, showing that decedent died leaving real estate and personal property having an estimated value of $640,000.00 and $160,000.00, respectively, for a grand total of $800,000.00. According to Appraisal Report filed on February 2, 1988, by Beatrice George

and Lawrence E. Bryan, duly appointed and commissioned by the Court to appraise the estate left by decedent, pursuant to 15 V.I.C. §§ 312, 313 and 314, the true value of the assets left by decedent was $179,370.00, at the time of his death.

Notice to Creditors and all other persons having any claims against the estate was published according to law in *The Daily News of the Virgin Islands* on February 27, 1988, and on March 5, 12 and 19, 1988.

On June 24, 1986, claimant filed with the administrator of the estate a verified claim in the following language: "Take notice that the undersigned hereby claims the right to share in the distribution of the within estate as the daughter of the deceased, in proportion to the deceased's other children, pursuant to Title 15 V.I.C. § 84." By virtue of the authority vested in him by 15 V.I.C. § 394, this claim was "examined and rejected" by the administrator on September 4, 1986, and thus filed with the Court on November 3, 1988.[1] On November 3, 1988, Barbara Twine, Esquire, then serving as attorney for the estate in the law firm of Grunert, Stout, Moore and Bruch,[2] motioned the Court to have a hearing on the rejected claim pursuant to 15 V.I.C. § 395.[3] This hearing was by pretrial order of the Court dated June 14, 1989, scheduled to take place on Tuesday, July 11, 1989, at 11:00 A.M.[4]

The pretrial order also provided in paragraph 2 thereof the following: "Attorney Bruch raised the question as to whether the law of the Virgin Islands, as enunciated in the case of The Estate of Henry O. Creque, Deceased, (Probate No. 12/1957), decided June 23, 1964, 4 V.I. 568, did not deprive the Court of jurisdiction in the matter. Attorney Bruch is given ten (10) days from the date of the hearing to present a Memorandum of Law on the question to the Court. Attorney Wynter is given ten (10) days from the date of receipt of Attorney Bruch's Memorandum to file a Reply thereto with Attorney Bruch and the Court."

---

[1] At the time of filing of the claim, claimant was represented by Attorney Richard Knoepfel.

[2] Attorney Twine has since left the firm.

[3] According to 15 V.I.C. § 395, this motion should have come from the claimant and/or her attorney.

[4] At the pretrial hearing, claimant was represented by Attorney Wynter, and the law firm representing the Estate by Attorney Susan Bruch.

After the entering of the pretrial Order fixing the date of the Court hearing, pursuant to 15 V.I.C. § 395, the following documents were filed by the parties:

1. Motion to Shorten Time, from 30 to 15 days, from date of service of Notice to Post Security for Costs and for claimant to respond to administrator's Request for Production of Documents directed to claimant, dated June 19, 1989, "for the reason that this matter is set for trial on July 11, 1989, if not sooner disposed of by Motion";

2. Motion to Enlarge Time to Complete Discovery, to Respond to Administrator's Motion to Deny Claim, to Answer Administrator's Interrogatories, and for a Continuance dated June 25, 1989, filed by attorney for claimant, and Opposition thereto, dated June 30, 1989, filed by the attorney for the Estate;

3. The attorneys for the estate also filed Notice to claimant to post Security for Costs in the amount of $500.00, pursuant to 5 V.I.C. § 547 and 15 V.I.C. § 165, on the ground that claimant is a nonresident of the district, dated June 19, 1989; Request for Production of Documents pursuant to Rule 34 of the Federal Rules of Civil Procedure, dated June 19, 1989; and Notice of Service of Interrogatories, pursuant to Local Rule 22 and Rule 33 of the Federal Rules of Civil Procedure, dated July 6, 1989.

On July 11, 1989, the date the case was scheduled by the Court in its aforesaid pretrial order to be heard on the merits, the administrator of the estate, Dr. Lucien Moolenaar, appeared with his Attorney, Grunert, Stout, Moore and Bruch, Esquires (Susan Bruch, of Counsel). The claimant, Andrea Rosemond, did not appear in person, but was represented by her attorney, Eszart A. Wynter, Esquire. Attorney Wynter then filed with the Court the following documents numbered in tandem to the above documents, filed in the interim between the time of the pretrial hearing and the date set for the trial on the merits:

4. Response to the Administrator of the Estate of Lucien A. Moolenar, Sr. (Sic) Motion to Deny Claim, which reads as follows:

"COMES NOW the Claimant, Andrea Rosemond, by and through her attorney, Eszart A. Wynter, of Counsel, and opposes to the Estate's Motion to Deny Claim for the following reasons:

1. This Court lacks jurisdiction to decide this matter under Title 15 V.I.C., Section 84(13).

2. This Court has jurisdiction under Title 16 V.I.C., Section 462 to enforce the Claim.

3. In re Creque does not apply based on the facts of this case.

WHEREFORE, Claimant Andrea Rosemond prays that the Administrator of the Estate of Lucien Moolenaar be denied with prejudice.

Dated: This 10th day of July, 1989.

/s/_____

ESZART A. WYNTER, ESQUIRE
Attorney for Andrea Rosemond":

5. Memorandum of Law in Support of Claimant's Motion;

6. Motion for Continuance, to continue the trial to a date later on the ground that Claimant, an enlistee in the U.S. Navy, is scheduled to commence a trip 1300 hours on July 4, 1989, and not to return until 2100 hours July 10, 1989, as per copy of travel order attached to the Motion.

The Court at first granted a continuance to Thursday, July 13, 1989, but because of Claimant's counsel's insistence that he needed up to Friday, July 14, 1989, further continued the trial to take place July 14, 1989, or for all parties to file with the Court any additional materials which they intended to. All parties reached a consensus that if as of 5:00 p.m., July 14, 1989, neither party filed any further documents or communicated further with the Court on the case, the Court may proceed, pursuant to 15 V.I.C. § 395, to make and issue its decision based on the present state of the record, either affirming or reversing the action taken on claimant's claim by the administrator of the estate, pursuant to 15 V.I.C. § 394. As of 5:00 p.m. July 14, 1989, neither party, either verbally or in writing, communicated further with the Court.

## III. DISCUSSION

In her Response to the Motion to Deny her Claim of Paternity dated July 10, 1989, claimant admits in paragraph 1 thereof the contention of the administrator, that this Court lacks subject-matter jurisdiction to adjudicate her claim based on the provisions of 15 V.I.C. § 84(13), but in paragraph 3 thereof contends that In Re Creque supra nevertheless "does not apply based on the facts of this case." Secondly, claimant also contends that the Court has subject-matter jurisdiction based on the provisions of 16 V.I.C., § 462.

Because claimant, while conceding the Court lacks subject-matter jurisdiction to adjudicate her claim pursuant to 15 V.I.C. § 84(13),

contends Creque has nothing to do with this conclusion, we will first discuss this issue before turning to the question of the applicability of 16 V.I.C. § 462.

## A. *Application of 15 V.I.C. § 84(13) (1957) as Interpreted by Creque*

Two issues arise at this point in the case which merit the attention of the Court. The first issue is that of jurisdiction. If the Court finds it has jurisdiction of the subject-matter, to determine and adjudicate the issue of the paternity of the Claimant posthumously, the Court must proceed to try that matter on the merits and either affirm the decision of the administrator rejecting claimant's claim of filiation, or reverse the administrator and adjudicate at this time, after decedent's death, that he was the father of Claimant, and she is thus entitled to take a share in his net estate proportionate to that of his three children born in lawful wedlock. On the other hand, if the Court finds it lacks jurisdiction to determine the adjudicate the claim of paternity presented by claimant, for whatever reason or reasons, it is clear that such a finding must be the end of the matter. We therefore proceed first to examine the issue whether the Court has jurisdiction to adjudicate claimant's claim of paternity.

The attorney for the estate has called the Court's attention to the fact that there exists in this jurisdiction on-point precedent to guide the Court in arriving at the correct answer to this question. She called the Court's attention to the case of In Re Creque's Estate, 4 V.I. 568, 230 F. Supp. 849 (D.V.I. 164), in which the Honorable Judge Walter A. Gordon addressed the issue of whether action for adjudication of paternity may be brought after the death of the putative father, as is attempted by claimant in the case now before the Court. That was a case which was filed in 1962, for the adjudication of the paternity of a child of a person who died in May, 1957. In this case, the Court made it clear that while it took the position that it did have jurisdiction to adjudicate the question of paternity after the death of the father, this was because the law governing the case is the law in effect on the date of the death of decedent, and the law on that date, section 1 of act of the Legislative Assembly of the Virgin Islands, approved May 18, 1949 (Bill No. 9), "An Act Regarding the Property Status of Illegitimate Children," vested the Court with authority to adjudicate the issue of paternity after the death of the putative father. This act provided as follows: "An illegitimate child shall upon the approval of this

239

measure and thereafter be considered to have the same status, for the purpose of the descent of the property of his or her ancestors, as if he or she were born in lawful wedlock, provided that in cases where the ancestor in question is a father, he admitted of record paternity of such child by signing the official birth certificate; or he was or is adjudged the father of such child by a court of competent jurisdiction; and provided further that such father shall have all the rights and privileges provided by law to fathers of legitimate children." Judge Gordon held that since this 1949 act was the law in force and effect on the date of death of Mr. Creque, and the right of inheritance of his intestate heirs accrued on that date, that was the basis for his asserting and exercising jurisdiction, although the case was filed in 1962, and decided in 1964. But, he continued, if the law were as "changed" in the September 1, 1957, code on the date of Creque's death, four months earlier, May 18, 1957, he would have been powerless to exercise subject-matter jurisdiction. The law was changed in the V.I. Code, adopted on September 1, 1957, to read thus: "An illegitimate child shall be considered to have the same status, for the purpose of the descent and distribution of the property of his or her ascestors, as if he or she were born in lawful wedlock, (1) provided that in cases where the ancestor in question is a father, he admitted of record paternity of such child by signing the official birth certificate; (2) or he was adjudged the father of such child by a court of competent jurisdiction; (3) or by written acknowledgement he recognized such child as his." [Underscoring ours.]

In the instant case, the decedent died after the 1949 act was amended by the Virgin Islands Code on September 1, 1957, and while that amended version was still in effect. Therefore, according to the Creque case, this Court lacks subject-matter jurisdiction, for the law in force and effect on the date of decedent's death, June 5, 1985, 15 V.I.C. § 85(13), as construed by the District Court in the Creque case in 1964, is to the effect that no posthumous adjudication of paternity is permitted; that the issue of paternity may be adjudicated before and not after the death of the putative father.

We hold that the construction given the statute in the Creque case is relevant here, and applying the doctrine of stare decisis, we are required to follow it. We further hold that the language of the statute is clear and unambiguous, hardly calls for interpretation by the Court. The illegitimate child is granted the right to intestate

inheritance in the estate of the putative father when he dies intestate the same as if he were born in lawful wedlock if any one or more than one of three factors exist as of the date of death of the putative father, as provided by 15 V.I.C. § 84(13) (1957):

1. The putative father must have admitted of record paternity of such child by signing the official birth certificate of the child; or

2. At the time the claim is filed, the putative father must have been previously adjuged the father of Claimant by a court of competent jurisdiction; or

3. The putative father must have, by written acknowledgment, recognized such child as his.

Since in the case before the Court none of aforesaid three predicates or prerequisites has been proved to exist, based on the provisions of 15 V.I.C. § 84(13) (1957), as construed in the Creque case, supra, we must affirm the decision of the administrator of the estate rejecting the Claimant's claim of paternity of decedent, on the ground that the Court lacks subject-matter jurisdiction as contended by counsel for the estate.

### B. *Applicability of 16 V.I.C. § 462*

We turn now to Claimant's new and present contention of entitlement by virtue of 16 V.I.C. § 462.

For the first time in the litigation of this matter, on July 11, 1989, the date scheduled for trial to the Court pursuant to aforesaid pretrial order, claimant presented her *"Response to the Administrator of the Estate of Lucien A. Moolenaar, Sr. (Sic) Motion to Deny Claim,"* set forth ad verbum above, in which she takes a new tack. No more does she base her claim on 15 V.I.C. § 84(13) (1957), but on 16 V.I.C. § 462.

Section 462, codified under the heading "Legitimation by Acknowledgment," reads as follows:

"The father of an illegitimate child, by publicly acknowleging it as his own, receiving it as such, with the consent of his wife, if he is married, into his family, and otherwise treating it as if it were a legitimate child, thereby adopts it as such; and such child is thereupon deemed for all purposes legitimate from the time of its birth."

As was stated in the Legitimation of Williams, Territorial Court, St. Thomas and St. John, 1979, 16 V.I. 529, the legitimation of children born out of lawful wedlock is in derogation of the

241

common law. It is well settled that statutes in derogation of the common law must be strictly construed. That does not mean that the language used in the statute should be so interpreted as to frustrate its clear purpose; but neither must provisions be read into the statute that the legislature did not place there, or did not intend when it enacted the statute, so as to create rights or privileges which that body clearly did not intend to create.

A careful analysis of § 462 indicates that for "legitimation by acknowledgment," as this section is headed, to take place, or for legitimation from the time of birth of the child to take place, as stated in the body of the section, the decedent, during his lifetime, must have acknowledged said child as his own by doing all of three things: (a) he must have publicly acknowledged it as his natural child; (b) he must have received it as his natural child, with the consent of his wife, if married, into his family; and (c) he must have otherwise treated claimant as if claimant was a legitimate child. In Claimant's Memorandum of Law in Support of Claimant's Motion that the Court adjudicate her legitimation by decedent, dated July 10, 1989, she bases her claim on the following acts of decedent, [that he]:

"(a) Did finance Claimant, Andrea Rosemond's, first wedding;

"(b) Did transmit to Andrea Rosemond the sum of $2,000.00 for the purchase of a home in Virginia Beach in the year 1983;

"(c) Did escort Claimant, Andrea Rosemond, down the aisle during her wedding ceremony in 1983;

"(d) Attended the christening of Claimant Andrea Rosemond's oldest son;

"(e) Attended Claimant Andrea Rosemond's college graduation in 1977;

"(f) Did send airplane fare to Claimant Andrea Rosemond in order that Claimant Andrea Rosemond may attend the funeral services of Lucien A. Moolenaar, Sr., brother and father's funeral."

By the most liberal construction of these grounds, individually or as a whole, the Court can find no factual basis for a finding that decedent received claimant as his natural child, with the consent of his wife, into his family. Furthermore, it does not necessarily follow that decedent acknowledged paternity of claimant by any or all of the things listed as done by the decedent.

But counsel for claimant argued to the Court that decedent could not have received claimant as his natural child with the consent of his wife into his family because decedent and his wife were

separated. He therefore argues the Court should disregard this requirement of the statute. We disagree. We find no authority for such action in the statute. No proof has been presented to the Court as to the date decedent and his widow separated, whether it was before or after claimant reached her majority or married. Be that as it may, the statute does not provide that if decedent is separated from his wife, the requirement of receiving claimant in his family, with the consent of his wife, is not to be enforced by the Court. Such action would be appropriate only if authorized by the Legislature.

For a more ample perspective, it may be of some significance that claimant was born on March 23, 1955, and married in 1983, but official claim of paternity was made for the first time on June 24, 1986, thirteen years after she attained her majority, and a full year after decedent's death.

## IV. CONCLUSION

■ Since the Claimant's claim of paternity, giving her the right to take a distributive share in the net estate of decedent equal to that of each of decedent's lawful children, fails to meet any of the aforesaid three requirements of 15 V.I.C. § 84(13), especially the requirement of adjudication thereof prior to the death of the decedent, we hold that the Court has no alternative but to affirm the action taken by the administrator on September 4, 1986, rejecting the claim on the grounds that the Court lacks subject-matter jurisdiction to adjudicate it after the death of decedent as the claim is time-barred. We hold with the District Court in the Creque case that the change in the statute from "was or is adjudged," which appears in the present Code a 15 V.I.C. § 84(13), constitutes a special statute of limitation particularly applicable to claims of paternity; that this class of claims may not be legally adjudicated after the death of decedent; that to authorize posthumous adjudication of this particular type of claim will require action by the Legislature.

■■ We hold, further, that from the entire record that has been presented to us, the Court does not find that decedent publicly acknowledged claimant as his natural child; or that decedent received claimant as his natural child with the consent of his wife into his family. As to this requirement of the legitimation statute, we hold that even if decedent and his wife were separated makes no difference, for the simple reason that the state does not say this makes any difference. When and if the statute says so, the Court will be guided accordingly. Finally, the Court cannot find that

243

decedent otherwise treated claimant as if claimant was his legitimate child. Therefore, claimant's motion, that the Court reverse the decision of the administrator rejecting her claim to a distributive share of decedent's net estate proportionate to that of each of his lawful children on the ground that he legitimized her pursuant to 16 V.I.C. § 462 is denied.

The decision of the administrator made pursuant to 15 V.I.C. § 394, rejecting Claimant's claim to paternity, is affirmed.

## INTERLOCUTORY JUDGMENT

The Court having made and issued its Memorandum Opinion on even date herewith, and the Court being fully advised and satisfied in the premises, it is hereby

Ordered, Adjudged and Decreed that the decision of the administrator in above-titled matter rejecting the Claim of Andrea Rosemond that she share in the distribution of the above-titled estate as the daughter of the deceased in proportion to the other children of the deceased pursuant to 15 V.I.C. § 84(1) is affirmed.