**IN THE MATTER OF THE APPLICATION OF:
BABY GIRL LAKE
FOR A CHANGE OF NAME TO:
SHANIQUA STACIE JOSEPH.**

Family No. Fm1/1995

**IN RE: LEGITIMATION OF:
FRANK ANTONIO DORE, INFANT.**

Family No. Fm5/1995

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

December 19, 1995

IVER A. STRIDIRON, ESQ., LAW OFFICES OF IVER A. STRIDIRON, *for Petitioner Irma Lake (Baby Girl Lake)*

JACQUELINE DORE, *Petitioner Pro Se (Baby Boy Dore)*

DIASE, *Judge*

## MEMORANDUM OPINION

This Court is asked to decide an issue which, in the succeeding years, has been presented with a surprisingly increasing frequency. Specifically, the Court is asked by the petitioners in both cases to

67

posthumously adjudicate the putative fathers as the paternal parents of the minor children. For the reasons stated below, the Court holds that it is without statutory authority to do so and will dismiss the petitions.

## FACTS

On April 12, 1995, the Petitioner Irma Lake ("Lake") filed an action for paternity. In her petition, Lake alleges that a female child, referred to as "Baby Girl Lake", was born to her on January 16, 1995, in St. Thomas, Virgin Islands. She further alleges that the natural father of the child is Franklyn Joseph ("Joseph"), who died as a result of a homicide on May 28, 1994, in St. Thomas, Virgin Islands, and that the child was conceived approximately one month before he died.

In support of her petition, Lake filed an original birth certificate of the child and a certified copy of the death certificate of Joseph. On the birth certificate, the full name of the child is "Shaniqua Stacie Joseph" and there is no name for the father. She further supported her petition with four sworn affidavits, wherein each affiant attests that, to his or her knowledge and belief, Baby Girl Lake is the natural child of Joseph.[1] Lake requests that the Court declare Joseph to be the natural father of Baby Girl Lake.

On December 7, 1995, the Court held an evidentiary hearing on the matter. At the hearing, Lake testified that, even though the child was conceived approximately one month before Joseph's death, she and Joseph knew of the pregnancy through a positive result of a blood test. Lake also testified that she and Joseph were not married but had lived together for eight years and had two other children. Two other witnesses testified that Joseph knew of the pregnancy.[2] Jennifer Edwards, a friend of Lake's, testified that she was present when Lake told Joseph about the pregnancy. Christophie Joseph, Joseph's mother, testified that Joseph told her Lake was pregnant.

---

[1] These affidavits were executed by Christophie Joseph, Joseph's mother; Errington Joseph, Joseph's father; Elizabeth Cornwall, Lake's aunt; and Jennifer Edwards, Lake's friend and co-worker.

[2] Those testifying included Jennifer Edwards, Lake's friend; Christophie Joseph, Joseph's mother; and Elizabeth Cornwall, Lake's aunt.

Likewise, on July 10, 1995, Jacqueline Dore ("Dore") filed a petition for the legitimation of a male child born to her on May 17, 1995, in St. Thomas, Virgin Islands. The Court will refer to this child as "Baby Boy Dore". In her petition, Dore avers that the natural father of the child is Frank Alfredo Powell, III ("Powell"), who died on October 1, 1994, in St. John, Virgin Islands as a result of injuries sustained in a motorcycle accident. Similar to Baby Girl Lake, the child was allegedly conceived approximately one month before Powell's death.

Dore supported her petition with an original Verification of Birth issued by the V.I. Department of Health for the child. On the Verification, the full name of the child is "Frank Antonio Powell". In her petition, however, Dore refers to the child as "Frank Antonio Dore". She further avers that the Health Department would not issue a birth certificate without a court order establishing that Powell was the natural father of the child. Dore also filed a certified copy of the death certificate for Powell. Furthermore, she offered the Court four sworn affidavits, wherein the affiants each aver of his or her knowledge and belief that Powell is the biological father of the child.[3] Dore also asks the Court to enter a judgment declaring the child the natural issue of Powell.

Also, at a hearing on December 7, 1995, the Court received testimony from Dore and several of her witnesses.[4] According to Dore, she and Powell were never married. Additionally, even though the child was apparently conceived approximately one month before Powell's death, Dore testified that she and Powell knew of the pregnancy since she had performed a home pregnancy test and had informed Powell of the positive result. Dore also testified that Powell never told anyone in her presence of the pregnancy. Joseph Challenger, Jr., Powell's first cousin, however, testified that Powell told him of the pregnancy.

---

[3] Affidavits were executed by Mary Elizabeth Powell, Powell's mother; Frank A. Powell, Jr., Powell's father; Milton Leonard, Powell's friend; and Joseph Challenger, Powell's friend and first cousin.

[4] The witnesses included Milton Leonard, Powell's friend; Mary Powell, Powell's mother; Frank Alfredo Powell, Jr., Powell's father; Charles Dore, Sr., Dore's father; and Joseph Challenger, Jr., Powell's friend and first cousin.

## LEGAL DISCUSSION

### A. *Subject Matter Jurisdiction*

The Territorial Court of the Virgin Islands was established by enactment of the Legislature of the Virgin Islands. V.I. CODE ANN. tit. 4, §§ 71-88 (Supp. 1994). Pursuant to the Revised Organic Act of 1954, § 21(b), 48 U.S.C.A. § 1611(b) (1987), this Court possesses only such jurisdictional powers conferred upon it by legislation. The Legislature has vested the Court with original subject matter jurisdiction in various matters, inter alia, cases to establish paternity and to legitimize children. 4 V.I.C. § 76. Subject matter jurisdiction refers to the Court's power to hear and determine cases of the general class to which the particular one belongs. 20 Am. Jur. 2d Courts § 105 (1965). In rendering decisions in the cases before it, the proper function of this Court is to administer justice in accordance with the established rule of law, and not to create or change it, even if the application creates a hardship. 20 Am. Jur. 2d, supra § 64.

■ In the Virgin Islands, an illegitimate child can be legitimized in four ways: by public acknowledgment of the child by the father (V.I. CODE ANN. tit. 16, § 462 (1964)); by the father signing a notarized affidavit acknowledging paternity (V.I. CODE ANN. tit. 19, § 832 (1976)); by a court order establishing paternity upon the petition of the mother or the father (V.I. CODE ANN. tit. 16, §§ 291-303 (1964 & Supp. 1995)); or by the marriage of the parents (V.I. CODE ANN. tit. 16, § 461 (1964)). At common law, illegitimacy was considered disgraceful and an illegitimate child, having neither a father known to law nor a mother, was considered a "child of nobody" or a "child of the people". 10 Am. Jur. 2d Bastards § 8 (1965). Public policy, though, clearly favors legitimation of children and the Legislature of the Virgin Islands has sought to ameliorate the harshness of the common law with respect to such illegitimate children. *In the Matter of the Legitimation of Lillian Mathilda Williams*, 16 V.I. 529, 534 (Terr. Ct. 1979). However, where statutes are enacted in derogation of the common law, such statutes must be strictly construed. *In the Matter of Estate of Lucien Alonzo Moolenaar, Sr.*, 24 V.I. 234, 242 (Terr. Ct. 1989). The *Moolenaar Court* further noted as follows:

70

That does not mean that the language used in the statute should be so interpreted as to frustrate its clear purpose; but neither must provisions be read into the statute that the legislature did not place there, or did not intend when it enacted the statute, so as to create rights or privileges which that body clearly did not intend to create.

*Id.* In determining its jurisdiction on the matters before it, this Court must be guided by these principles.

### B. *Acknowledgment*

In these cases, there is no evidence that the petitioners were married to the putative fathers or that the putative fathers signed affidavits of paternity. Consequently, the only lawful proceedings available for the legitimation of the children are acknowledgment and paternity.

■ For a child to be legitimized through acknowledgment, the applicable statute provides as follows:

[t]he father of an illegitimate child, by publicly acknowledging it as his own, receiving it as such, with the consent of his wife, if he is married, into his family, and otherwise treating it as if it were a legitimate child, thereby adopts it as such; and such child is thereupon deemed for all purposes legitimate from the time of its birth.

16 V.I.C. § 462. The putative father, therefore, is required to have done three things: publicly acknowledged the child as his own; received the child into his home; and otherwise treated the child as if he/she were a legitimate offspring. The word "publicly" is defined as "openly; in public, well known, open, notorious, common or general, as opposed to private, secluded, or secret." Black's Law Dictionary 1230 (6th ed. 1990).

In construing this statute, the Moolenaar Court held that the putative father must have done all three acts during his lifetime. *Moolenaar*, 24 V.I. at 242. In that case, a purported daughter of the decedent filed a claim to share in the distribution of the decedent's estate and requested that the Court posthumously adjudicate the issue of paternity. This claim was rejected by the administrator and

the Court. The Court found that the decedent's acts of paying for the claimant's wedding, providing her with monies to purchase her home, and attending her college graduation and the christening of her son did not, even from a liberal construction, fulfill the statutory requirements.

In regard to Baby Boy Dore, the petitioner has not presented any evidence that Powell took any affirmative actions during his lifetime to legitimatize the child. Also, based on the evidence offered, the Court cannot find that Powell publicly acknowledged and, thereby, legitimized the child during his (Powell's) lifetime. Under the most generous definition of "publicly", it would be difficult to maintain that, when Powell informed only his first cousin in a private conversation of Dore's pregnancy, it was a public affirmation of his paternity of the child. Furthermore, even if the Court were to find that Powell did publicly acknowledge the child as his own, it is factually impossible for the petitioner, by affidavits or witnesses, to establish that Powell also performed any of the other statutorily mandated acts with the child. Powell died before the birth of the child; therefore, he was prevented from taking the child into his home or otherwise treating the child as his legitimate issue.

The Court finds the same situation exists as to Baby Girl Lake. There are no facts before the Court which would evidence that Joseph took any affirmative steps during his lifetime to legitimize the child. Joseph privately told only one person about Lake's pregnancy. Also, no affiant or witness can establish that, during his lifetime, Joseph performed any of the required acts with the child as Joseph died before the child's birth.

Since the putative fathers, in their lifetimes, did not fulfill, and could not fulfill, all the criteria mandated by the statute, this Court concludes that it lacks the requisite jurisdiction to adjudicate the claims that the decedents are the fathers of the minor children.

## C. *Paternity Proceedings*

To establish paternity in the Virgin Islands, a mother of an illegitimate child can commence proceedings before a child's

eighteenth birthday or before the birth of a child, who, if born alive, would be illegitimate, by filing a petition with the Court. 16 V.I.C. § 291. She must allege "that the person named as the respondent . . . is the father of the illegitimate child . . . ." *Id.* (emphasis added).

■ Additionally, paternity can be established for the purpose of child support after the putative father has died. The applicable statute provides as follows:

[i]f the father of an illegitimate child dies before its birth or within a year after it was born, *and before an action against him for the support of the child has been brought to conclusion*, proceedings may be instituted before the proper court for the support of the child against the estate, and if proven to the satisfaction of the court that the deceased was the father of the child, the amounts necessary for the support of the child can be collected from his estate in the same way as any other debt.

16 V.I.C. § 301(a) (emphasis added).

■ A plain reading of these statutes leads the Court to the conclusion that, in drafting them, the Legislature intended the commencement of the paternity action during the lifetime of the putative father. In fact, the rules governing this Court in its conduct of bastardy proceedings provide for the issuance of an arrest warrant for the putative father to ensure his appearance before the Court for the purpose of determining the paternity of the child. Terr. Ct. R. 104.

However, in her submitted Memorandum and Points and Authorities in Support of Petitioner's Motion for the Court to Establish Paternity, Lake argues that 16 V.I.C. § 301(a) allows, alternatively, only for the adjudication of paternity if the father dies before the child's birth or within one year after the child is born. The Court does not agree with this reading. Pursuant to the applicable rules of statutory construction, "if 'and' is used, such portions of the sentence are to be considered jointly." 73 Am. Jur. 2d *Statutes* § 241 (1974). Thus, the phrase which follows, "and before an action against him for the support of the child has been brought to conclusion" must be considered jointly with the preceding phrases,

thereby requiring that the action be commenced during the decedent's lifetime.

■■■ The Court is further led to this conclusion because, where an applicable statute previously provided for the posthumous adjudication of paternity for inheritance, the Legislature, in its wisdom, subsequently amended the law to provide that such adjudication must be done during the lifetime of the putative father. Specifically, the Act of May 18, 1949, (Bill No. 9), a former version of V.I. CODE ANN. tit. 15, § 84(13) (1964) provided, in pertinent part, as follows:

> an illegitimate child shall . . . be considered to have the same status, for the purposes of the descent of the property of his or her ancestors, as if he or she were born in lawful wedlock, provided that in cases where the ancestor in question is a father, he admitted of record paternity of such child by signing the official birth certificate; or he *was or is adjudged* the father of such child by a court of competent jurisdiction; and provided further that such father shall have all the rights and privileges provided by law to fathers of legitimate children.

*Moolenaar*, 24 V.I. at 239-240 (emphasis added). The language "was or is adjudged" was interpreted as enabling posthumous adjudication of paternity. *Id.; see also In the Matter of the Estate of Henry O. Creque*, 4 V.I. 68 (D.V.I. 1964); *In the Matter of the Estate of Inger Heyn*, 4 V.I. 354 (D.V.I. 1958) (with the two latter cases adjudging decedent the father of an illegitimate child pursuant to Act of May 18, 1949).

Importantly, however, by legislative act approved on September 1, 1957, the words "or is" were deleted and this section was amended to read as follows:

> an illegitimate child shall be considered to have the same status, for the purpose of descent and distribution of the property of his or her ancestors, as if he or she were born in lawful wedlock provided that in cases where the ancestor in question is a father, he admitted of record paternity of such child by signing the official birth certificate; or he *was adjudged* the father of such child by a court of competent jurisdiction; or by written acknowledgment he recognized such child as his.

15 V.I.C. § 84(13) (emphasis added).[5] Consequently, based on the amendment, the Moolenaar Court held there could be no posthumous adjudication of paternity and that the issue of paternity can only be adjudicated before and not after the death of the putative father. *Moolenaar*, 24 V.I. at 240. The Creque Court also concluded that, under the amended statute, it lacked subject matter jurisdiction over a petition for the posthumous adjudication of paternity. *Creque*, 4 V.I. at 574.[6]

And, while it is arguable that 15 V.I.C. § 84(13) is concerned with establishing claims to the decedent's estate, but the cases before the Court seek only to establish the paternity of the children, the Court has a duty, in the construction of ambiguous statutes, to harmonize and reconcile laws as all laws are presumed to be consistent with each other. 73 Am. Jur. 2d, supra § 254. Thus, as 15 V.I.C. § 84(13) specifically prohibits the posthumous adjudication of paternity, the Court is led to also conclude that 16 V.I.C. § 301(a) must be read in the same light. Such a reading of 16 V.I.C. § 301(a) is required because, if the Court were to allow a petitioner to establish paternity under this statute, there would be nothing to prevent her from filing a subsequent claim against the decedent's estate as she would be armed with the Court's decree adjudging the person to be a child and, thus, an heir of the decedent. The petitioner would, therefore, be able to accomplish through the back door what the Legislature specifically prohibited her from doing through the front.

In the pending case of Baby Girl Lake, the petitioner asks the Court to posthumously adjudicate Joseph the paternal parent of the child. However, the Court has no authority to proceed in the matter. There is no respondent to answer the allegations contained in the petition. Additionally, the paternity action was not brought before the birth of the child and during Joseph's lifetime. The

---

[5] This Court was unable to obtain any legislative history on the 1957 amendment as the Archives Division of the Legislature of the Virgin Islands lost its computers due to Hurricane Marilyn.

[6] Though the action in *Creque* was filed in 1962, the Court found the petitioner to be the legitimate issue of the decedent because the Court held "the petitioner's right as an illegitimate child to the heirship accrued upon the death of her putative father, May 18, 1957" and the 1949 Act was still in effect at the time of her father's death. *Creque*, 4 V.I. at 572.

action was filed on April 12, 1995. Joseph died on May 28, 1994, while the child was born on January 16, 1995, eight months after Joseph's death.

Similarly with Baby Boy Dore, the petitioner seeks a posthumous adjudication of paternity. The Court also lacks the jurisdiction to proceed in this case. The action was not commenced before the birth of the child or during the lifetime of the putative father. This action was commenced on July 10, 1995. Powell died on October 1, 1994, and the child was born on May 17, 1995.

## CONCLUSION

Therefore, as written, the applicable statutes and case law interpreting these statutes, do not authorize the Court to establish Baby Girl Lake's or Baby Boy Dore's paternity. The Court is further led to this determination as the Legislature specifically prohibited the posthumous adjudication of paternity by amending the only statute allowing for such decisions. As such, this Court lacks the requisite subject matter jurisdiction to legitimatize an illegitimate child when the putative father did not take any of the required affirmative actions to acknowledge the child as his own during his lifetime and died before the commencement of a paternity action against him. The Court realizes that this decision negatively affects these children and any rights and privileges to which they may have been entitled as legitimate issue of their putative fathers. However, as concluded by the Moolenaar Court in 1989, "to authorize posthumous adjudication of this particular type of claim will require action by the Legislature." *Moolenaar*, 24 V.I. at 243. To date, over six years later, the Legislature still has not acted, thus prohibiting this Court from granting the relief requested. An appropriate Judgment will be entered.

## JUDGMENT

A Memorandum Opinion having been entered on even date, accordingly, it is hereby

ORDERED, ADJUDGED AND DECREED that the Petitions in the above-captioned matters are DISMISSED; and it is further

ORDERED that a copy of this Order shall be personally served on Jacqueline Dore; and a copy directed to Iver Stridiron, Esq.