The Honorable Jim Argue, Jr. State Senator 5300 Evergreen Drive Little Rock, Arkansas 72205-1814
Dear Senator Argue:
I am writing in response to your request for an opinion on three questions regarding "the legality of Governor Mike Huckabee's announced intention to use tobacco settlement funds for the State's `Medically Needy Program' as administered by the Department of Human Services."[1]
Your three questions are as follows:
 1. Specifically, is the use of funds from the Medicaid Expansion Program Account, for the Medically Needy Program, legally consistent with the limitations contained in Section 12 of the Tobacco Settlement Proceeds Act (Initiated Act One), which requires that the funds not be used to replace or supplant other funds available in the Department of Human Services Grants Fund Account?
 2. Is it legally permissible to use Medicaid Expansion Program money for the Medically Needy Program considering the uses and limitations placed on such funds as are identified in Section 7 of Act 1574 of 2001?
 3. Are there any other provisions contained in Initiated Act 1 of 2000 or contained in Act 1574 of 2001 which legally prohibit the use of the Medicaid Expansion Program funds for the Medically Needy Program?
RESPONSE
In my opinion, the answer to your first and second questions is "no." The answer to your third question is "yes."
Question 1 — Specifically, is the use of funds from the MedicaidExpansion Program Account, for the Medically Needy Program, legallyconsistent with the limitations contained in Section 12 of the TobaccoSettlement Proceeds Act (Initiated Act One), which requires that thefunds not be used to replace or supplant other funds available in theDepartment of Human Services Grants Fund Account?
In my opinion, the answer to this question is "no."
The "Tobacco Settlement Proceeds Act" was proposed by initiative petition pursuant to Amendment 7 of the Arkansas Constitution and approved by the voters at the November 2000 general election. See Initiated Act 1 of 2000, codified in the Arkansas Code at A.C.A. §§ 19-12-101 through -118 (Supp. 2001). A portion of this act creates the "Medicaid Expansion Program Account." That account is defined as the "account by that name created pursuant to § 19-12-112 to be funded from the Tobacco Settlement Program Fund and used by the Arkansas Department of Human Services for the purposes set forth in [the Tobacco Settlement Proceeds Act.]" A.C.A. § 19-12-102(a)(13) (Supp. 2001). See also A.C.A. § 19-5-1121 (Supp. 2001) (creating the fund and stating that the fund shall be used for those purposes as set out in § 19-12-112). The "Medicaid Expansion Program Account" is an account in the state treasury, and is funded through disbursements made to the State of Arkansas under the "Master Settlement Agreement" entered into by certain states with certain participating tobacco manufacturers. The complete distribution of moneys from this "Master Settlement Agreement" is set out in detail in Initiated Act 1. The moneys that eventually make their way to the Medicaid Expansion Program Account are first received into the "Tobacco Settlement Cash Holding Fund" (a "cash fund" outside the state treasury) and from there are disbursed into the "Tobacco Settlement Program Fund" (a state treasury fund) and finally into the "Medicaid Expansion Program Account" (a state treasury fund), which is one of four "program accounts" set up by the Act. See A.C.A. §§ 19-12-102(a)(24); 19-12-104(b) and (d)(2); and19-12-108(d)(4).
 Initiated Act 1 contains provisions governing the use of funds in the Medicaid Expansion Program Account. As an initial matter, § 19-12-108(a), in creating the "Tobacco Settlement Program Fund," through which the relevant funds flow, provides in pertinent part:
 All moneys deposited into the Tobacco Settlement Program Fund are hereby restricted in their use and to be used solely as provided in this chapter. All expenditures and obligations that are payable from the Tobacco Settlement Program Fund and from each of the program accounts, shall be subject to the same fiscal control, accounting, budgetary and purchasing laws as are expenditures and obligations payable from other State Treasury funds, except as specified otherwise in this chapter.
Section 19-12-112, which is the codification of Section 12 of Initiated Act 1, the section about which you inquire, provides in pertinent part that:
 (a) There is hereby created a trust fund on the books of the Treasurer of State, Auditor of State and Chief Fiscal Officer of the State within the Tobacco Settlement Program Fund maintained by the State Board of Finance an account to be known as the "Medicaid Expansion Program Account." Such account shall be used by the Arkansas Department of Human Services for such purposes and in such amounts as may be appropriated in law. These funds shall not be used to replace or supplant other funds available in the Department of Humans [sic] Services Grants Fund Account. The funds appropriated for this program shall not be expended, except in conformity with federal and state laws, and then, only after the Arkansas Department of Human Services obtains the necessary approvals from the federal Health Care Financing Administration.
* * *
 (c) All moneys deposited to the Medicaid Expansion Program Account except for investment earnings shall be used for the purposes set forth in § 19-12-116, or such other purposes as may be appropriated in law.
(Emphasis added.)
Section 19-12-116, referred to above in subsection (c), governs the establishment and administration of the Medicaid expansion program. It provides in relevant part:
 (a) It is the intent of this chapter that the Arkansas Department of Human Services should establish the Medicaid expansion program described in this section, and to administer such program in accordance with law.
 (b) The Medicaid expansion program shall be a separate and distinct component of the Medicaid program currently administered by the Department of Human Services and shall be established as follows:
(1) expanding Medicaid coverage and benefits to pregnant women;
 (2) expanding inpatient and outpatient hospital reimbursements and benefits to adults aged nineteen (19) to sixty-four (64);
 (3) expanding non-institutional coverage and benefits to adults aged 65 and over; and
 (4) creating and providing a limited benefit package to adults aged nineteen (19) to sixty-four (64). All such expenditures shall be made in conformity with the State Medicaid Plan as amended and approved by the Health Care Financing Administration.
(Emphasis added.)
The question presented is whether funds in the Medicaid Expansion Program Account may be legally used to make up a budget shortfall in the "medically needy" portion of the state's Medicaid program.[2] In my opinion Section 12 of Initiated Act 1 (A.C.A. § 19-12-112, the section you reference), and derivatively Section 16 of that Act, codified at A.C.A. § 19-12-116 above, dictate a negative answer to this question.
Section 19-12-112(a) states that the funds in question "shall not be used to replace or supplant other funds available in the Department of Human Services Grants Fund Account." It might be contended that this language, standing alone, does not prohibit the action you describe, it merely prohibits the relevant funds from being used to replace "other funds available" in the Grants Funds Account.[3] It might be contended that due to the budget shortfall, funds are no longer "available" in the Grants Fund Account for the "medically needy" portion of the Medicaid plan and as a consequence, funds from the Medicaid Expansion Program Account would not be supplanting available funds.
In my opinion, however, A.C.A. § 19-12-112(c), which references A.C.A. §19-12-116, obviates any such contention. Subsection (c) of § 19-12-112
states that funds in the Medicaid Expansion Program Account "shall be used for the purposes set forth in A.C.A. § 19-12-116, or such other purposes as may be appropriated in law." As set out earlier, §19-12-116(b)(1) through (4) list the four components of the Medicaid expansion program. Funding the "medically needy" portion of the existing Medicaid program is not listed.
In addition, § 19-12-116(b) expressly provides that the Medicaid expansion program "shall be a separate and distinct component of the Medicaid program currently administered by the Department of Human Services. . . ." (Emphasis added). In my opinion, this language refers to the Medicaid program administered by the Department on the effective date of Initiated Act 1 of 2000.
It has been held that the word "currently" in this context "[n]ormally . . . designates the very time of the utterance or the instrument using the word" and "speaks as of its effective date. . . ." Rhymer v. Governmentof the Virgin Islands, 176 F.Supp. 338 (D. Vir. Islands 1959). See also,Hotel Employees and Restaurant Employees International Union v. Davis, 21 Cal.4th 585, 981 P.2d 990, 88 Cal. Rptr.2d 56 (1999) (term "currently" within the meaning of the State Constitution's declaration that "[t]he Legislature has no power to authorize, and shall prohibit casinos of the type currently operating in Nevada and New Jersey," refers to 1984, the time of its use in that declaration, rather than the time at which prohibited casinos are purportedly authorized).
Initiated Act 1 of 2000 bore no stated effective date, but under Amendment 7 to the Arkansas Constitution, "[initiated] measures shall be operative on and after the 30th day after the election at which it is approved, unless otherwise specified in the act." See Arkansas Constitution, Amendment 7, "General Provisions" "Majority." That date as to Initiated Act 1 is December 7, 2000. In my opinion, therefore, if the Department of Human Services administered a "medically needy" component of the Medicaid program on December 7, 2000, funds from the Medicaid Expansion Program Account may not be used to support it under current law. Current law requires the Medicaid Expansion Program Account to be utilized for programs that were not administered by the Department on December 7, 2000. In my opinion, therefore, the answer to your first question is "no."
Question 2 — Is it legally permissible to use Medicaid Expansion Programmoney for the Medically Needy Program considering the uses andlimitations placed on such funds as are identified in Section 7 of Act1574 of 2001?
It is my opinion that the answer to this question is "no."
Act 1574 of 2001 is entitled "An Act to Make an Appropriation for the Medicaid Expansion Program for the Department of Human Services for the Biennial Period Ending June 30, 2003; and for Other Purposes." Section 7 of Act 1574 is a "special language" provision that is not to be incorporated into the Arkansas Code. It provides as follows:
 The Medicaid Expansion Program as established by Initiated Act 1 of 2000 shall be a separate and distinct component embracing (1) expanded Medicaid coverage and benefits to pregnant women; (2) expanded inpatient and outpatient hospital reimbursements and benefits to adults aged nineteen (19) to sixty-four (64); (3) expanded non-institutional coverage and benefits to adults aged 65 and over; and (4) creation and provision of a limited benefit package to adults aged nineteen (19) to sixty-four (64), to be administered by the Department of Human Services. Separate Paying Accounts shall be established for the Medicaid Expansion Program as designated by the Chief Fiscal Officer of the State, to be used exclusively for the purpose of drawing down federal funds associated with the federal share of expenditures transferred from the Medicaid Expansion Program Account or for any other appropriate state match funds.
In my opinion, the use of funds in the Medicaid Expansion Program Account to fund the "medically needy" component of the Medicaid program would violate the language of § 7 of Act 1574 for the same reasons discussed in response to your first question. The § 7 language tracks the language of A.C.A. § 19-12-116(b), which requires the Medicaid expansion program to be a "separate and distinct" component of the Medicaid program. It also enumerates the same four items embraced within the Medicaid expansion program detailed in A.C.A. § 19-12-116(b)(1)-(4). In my opinion, therefore, the use of money from the Medicaid Expansion Program Account to fund the medically needy program would violate Act 1574 as well as Initiated Act 1 as discussed above.
In addition, Section 13 of Act 1574 is entitled "Legislative Intent" and provides that:
 It is the intent of the General Assembly that any funds disbursed under the authority of the appropriations contained in this act shall be in compliance with the stated reasons for which this act was adopted, as evidenced by Initiated Act 1 of 2000, the Agency Requests, Executive Recommendations and Legislative Recommendations contained in the budget manuals prepared by the Department of Finance and Administration, letters, or summarized oral testimony in the official minutes of the Arkansas Legislative Council or Joint Budget Committee which relate to its passage and adoption.
(Emphasis in original).
It is clear, therefore, that funds disbursed under the authority of Act 1574 can only be used for purposes consistent with Initiated Act 1. Because funds in the Medicaid Expansion Program Account are restricted in purpose by the substantive law in Initiated Act 1, as echoed in Act 1574, the funds may not be used to fund the "medically needy" program without legislative sanction. The Department of Human Services is granted separate appropriation authority to pay for the "medically needy" program under Act 1638 of 2001, § 5. That appropriation does not specify a particular fund from which the payments are to be made but states only that the funds are "payable from the paying account as determined by the Chief Fiscal Officer of the State. . . ." In any event, this Act does not authorize payment from the Medicaid Expansion Program Account.
The Arkansas Constitution requires a specific appropriation prior to funds being withdrawn from the state treasury. See Arkansas Constitution, art. 5, § 29 ("No money shall be drawn from the treasury except in pursuance of specific appropriation made by law, the purpose of which shall be distinctly stated in the bill, and the maximum amount which may be drawn shall be specified in dollars and cents; and no appropriations shall be for a longer period than two years); and § 16 § 12 ("No money shall be paid out of the treasury until the same shall have been appropriated by law, and then only in accordance with said appropriation.") Decisions of the Arkansas Supreme Court indicate that an appropriation meets the requisite "specificity" if it is specific as to the purpose for which it is to be used, the time of payment and as to the fund out of which it shall be paid. State Game Fish Commission v.Hornaday, 219 Ark. 184, 242 S.W.2d 342 (1951) and Scougale v. Page,194 Ark. 280, 106 S.W.2d 1023 (1937), each citing Grable v. Blackwood,180 Ark. 311, 22 S.W.2d 41(1929), overruled in part on other grounds inState Highway Commission v. Nelson, 191 Ark. 629, 87 S.W.2d 394
(1935). The appropriation contained in Act 1574 of 2001 is not for the specific purpose of sustaining the "medically needy" portion of the Arkansas Medicaid program. The appropriation contained in Act 1638 of 2001, § 5 is for this purpose, but that appropriation does not specifically designate the Medicaid Expansion Program Account as the fund out of which it is payable.
In my opinion, therefore, the answer to your second question is "no."
Question 3 — Are there any other provisions contained in Initiated Act 1of 2000 or contained in Act 1574 of 2001 which legally prohibit the useof the Medicaid Expansion Program funds for the Medically Needy Program?
In my opinion, the answer to this question is "yes." The relevant provisions have been discussed above and include A.C.A. § 19-12-112(c); §19-12-116 and § 13 of Act 1574. I will note that Initiated Act 1 refers in more than one place to the requirement that funds in the Medicaid Expansion Program Account shall be expended in compliance with Act 1 or as otherwise appropriated by law. See A.C.A. § 19-12-112(a) ("[s]uch account shall be used by the Arkansas Department of Human Services for such purposes and in such amounts as may be appropriated in law") (emphasis added); and A.C.A. § 19-12-112(c) ("[a]ll moneys deposited to the Medicaid Expansion Program Account . . . shall be used for the purposes set forth in § 19-12-116, or such other purposes as may beappropriated in law") (emphasis added). If funds in the Medicaid Expansion Program Account are to be used for purposes other than those listed in A.C.A. § 19-12-116, a specific appropriation from the Account must precede that usage.
Senior Assistant Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:ECW/cyh
[1] Your question arises because "[Governor] Huckabee announced January 16 that $2.9 million would be taken from the portion of the tobacco settlement proceeds that is targeted for Medicaid expansion. The money would preserve spending in the `medically needy' category of the Medicaid budget during the last three months of the fiscal year — April, May and June." David Robinson, "AG to Expedite Legal Opinion on Huckabee's Use ofTobacco Funds," Arkansas News Bureau February 12, 2002.
[2] As stated in Smith v. Rasmussen, 249 F.3d 755 (8th Cir. 2001), with regard to Medicaid "[a] state plan must provide for medical assistance to the categorically needy, but the state may choose whether to provide services to those persons within the classification of medically needy who "do not qualify for some forms of federal assistance but who nonetheless lack the resources to obtain adequate medical care."Citing Hodgson v. Board of County Comm'rs, County of Hennepin,614 F.2d 601, 606 (8th Cir. 1980).
[3] The Department of Human Services "Grants Fund Account" is mentioned at A.C.A. § 19-5-306(10)(A) (Supp. 2001) and "shall be used for [certain enumerated] grant programs to consist of general revenues and any other nonfederal funds, as may be appropriated by the General Assembly."